pCrto

In The
United States District Court
Northern District of Illinois

FILED

JUN 26 2013 aew
6-26-13
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

LESTER DOBBEY,
Plaintiff,

v.

Civil No. 12 C 1739

Jacqueline Mitchell-Lawshea, et al.,
Defendants.

Honorable Judge Presiding,
Robert M. Dow, Jr.

## Plaintiff's Local Rule 56.1 Statement of Uncontested Facts Against Defendants Lawshea and Dangerfield

NOW COMES Plaintiff, LESTER DOBBEY, pro se, pursuant to Local Rule 56.1, presents his Statement of Uncontested Facts, against Defendants Jacqueline Mitchell-Lawshea and Michael Dangerfield, In Support of Plaintiff's Summary Judgment Motion.

In Support Thereof:

1. In March 2012, Plaintiff brought this Civil Action against Defendants Jacqueline

-1-

Mitchell-Lawshea and Michael Dangerfield, under the Eighth and Fourteenth Amendments to the United States Constitution, alleging Deliberate Indifference, Cruel and Unusual Punishment regarding his serious Medical Condition and needs, While Defendants were purporting to act under the Color of Law. (Pl. Compl. At ¶ 1, 62 and 64).

2. Defendant Lawshea, was one of the Dentistry Doctors and Dentist, who worked at Stateville Correctional Center, at All times Relevant to Plaintiff's Complaint. (Pl. Compl. At ¶ 5 and 11).

3. Defendant Dangerfield, was one of the Correctional Officers, Who worked at Stateville Correctional Center, at All times Relevant to Plaintiff's Complaint. (Pl. Compl. At ¶ 7 and 13).

4. On January 7, 2011, Plaintiff Stopped ("Medical Technician") CMT-David Barnes, at Approximately 7:30 Am, While he

BRAND HOUSE, AND EXplained to him that Plaintiff WAS EXPERIENCING AN "EXCESSIVE Tooth Ache". (Pl. Compl. At ¶ 15; Pl. Compl. Exs. # DB: 00311, # DB: 00312, Ex. #3; SEE, Attached Exhibit-A).

5. ON JANUARY 7, 2011, Plaintiff EXplained to CMT-David BARNES, that He had AN INfECtioN SURROUNDING His Tooth, Which had His gums inFlamed, AND Where the Ache EXtended to Plaintiff's EAR AND HEAD. Which Plaintiff Also physically showed CMT-BARNES that His Tooth WAS loose AND His gums leaking pus IN the SURROUNDING AREA. (Pl. Compl. At ¶ 16; Pl. Compl. Exs. # DB: 00311, # DB: 00312, Ex. #3; SEE, Attached Exhibit-A).

6. ON JANUARY 7, 2011, CMT-BARNES Asked Plaintiff FOR his information, inWhich, Plaintiff WROte AN, "EmERGENcy REQUESt to HEALth CARE Unit-DENtistRy", stAting, "I ("Plaintiff") have AN INFECtioN iN ONE tooth, Where Also I AM in SEVERE PAin, HEADACHE, EARACHE AND toothache. ITs becoming UNBEARABLE to deal

-3-

With, And I need some Emergency Attention, Some Antibiotics, and Pain Medication. (Pl. Compl. At ¶ 17; Pl. Compl. Exs. # DB: 00311; DB: 00312, Ex. #3; See, Attached Exhibit-A).

7. On January 7, 2011, CMT- Barnes took Plaintiff's "Emergency Request" and stated that he would turn it in to Dental as "Urgent", and ask the Dentistry to have Plaintiff brought to the Dentist that same day. (Pl. Compl. At ¶ 18; Pl. Compl. Exs. # DB: 00311, DB:00312, Ex. #3; See, Attached Exhibit-A).

8. On January 7, 2011, CMT- Barnes, noted and wrote on Plaintiff's "Emergency Request to Dental", "R/O Urgent Abscess Dental Loose Teeth Very Painful". (Pl. Compl. Ex. # DB: 00311).

9. On January 7, 2011, CMT- Barnes, wrote a "Health Care Unit Referral", for Plaintiff asking, "Please Schedule this Inmate for the Dental Clinic", And that the, "Reason for Appointment R/O Abscess." (Pl. Compl. Ex. # DB: 00312).

10. On January 7, 2011, Plaintiff was not seen by anyone from the Dental Clinic. (See, Pl. Compl. at ¶ 21; See, Attached Exhibit-A).

11. On January 11, 2011, Plaintiff stopped CMT-Barnes, again, as he proceeded through Bravo House, and asked him did he turn in Plaintiffs information to the Dentist, because Plaintiff had not been called or seen by anyone, as Plaintiff further explained to CMT-Barnes that he was still in severe pain. (Pl. Compl. at ¶ 22; Pl. Compl. Ex. #3; See, Attached Exhibit-A).

12. On January 11, 2011, CMT-Barnes told Plaintiff that he turned in Plaintiffs information to the Dentist and informed them that it was "Urgent" because of the Abscess. CMT-Barnes, further told Plaintiff that when he finished his rounds he was going to see if the Dentistry would call Plaintiff over on this same day. (Pl. Compl. at ¶ 23; Pl. Compl. Ex. #3; Also see, Attached Exhibit-A).

13. On January 11, 2011, Plaintiff was not seen by Anyone from the Dental Clinic. (Pl. Compl. At ¶ 24; Pl. Compl. Ex. #3; see, Attached Exhibit - A).

14. On January 12, 2011, Defendant Lawshea, wrote and noted in Plaintiff's Dental Chart/Records, "Pt. ("Patient") Reports Abscess", This was Defendant Lawshea's ▮▮▮ First time learning that Plaintiff was complaining of his Tooth Issues. And Defendant Lawshea scheduled Plaintiff to be seen on January 14, 2011. (Pl. Compl. At ¶ 25; Pl. Compl. Ex. #DB: 00308; ▮▮▮ also see, Attached Exhibit - B, At ¶ 9).

15. On January 14, 2011, Defendant Lawshea, noted and wrote in Plaintiff's Dental Chart/Records, "Reschedule Appt ("Appointment"), Staff Shortage to R+C, bore Abscess, 1/25/2011." (Pl. Compl. Ex. # DB: 00308).

-6-

16. On January 14, 2011, Plaintiff went to the Health Care Unit for his scheduled appointment, inwhich, Plaintiff was greeted at the Health Care Unit-Door by Defendant Dangerfield, and placed in the Health Care Unit's Bullpen. (Pl. Compl. At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit-B, At ¶ 14; also see, Attached Exhibit-D).

17. On January 14, 2011, Plaintiff was told by Defendant Dangerfield that his appointment was cancelled. Plaintiff then asked Defendant Dangerfield "Why" was the appointment cancelled. Defendant Dangerfield, stated that he didn't know why. (Pl. Compl. At ¶ 26; Pl. Compl. Exc. #3; See, Attached Exhibit -B, At ¶ 17; also see, Attached Exhibit-D).

18. On January 14, 2011, Plaintiff then asked Defendant Dangerfield, could he atleast go get some medical personnel, because Plaintiff was in severe pain, and showed Defendant Dangerfield his infected tooth, because Plaintiff wanted to get some pain medication. (Pl. Compl.

At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit - D).

19. On January 14, 2011, Defendant Dangerfield, told Plaintiff that he couldn't be seen by medical personnel if he didn't have a call pass, and that his ride back to the cell-house was waiting. In which, Plaintiff was sent out of the Health Care Unit by Defendant Dangerfield, and escorted to Bravo House by another Correctional officer. (Pl. Compl. At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit - D).

20. Later, On January 14, 2011, Plaintiff wrote and filed an "Emergency Grievance" to Warden Marcus Hardy, explaining about his Tooth-ache, Headache, Earache, Tooth Infection and Pains. Requesting, quote, "To be seen by the Dentist A.S.A.P." (Pl. Compl. At ¶ 27; Pl. Compl. Ex. #3).

21. On January 19, 2011, Plaintiff began experiencing a fever and upset stomach, which pained him to the point that he began to vomit Bile, while experiencing severe tremors in his

Body, having Cold and Hot Shakes. (Pl. Compl.
At ¶ 28; see, Attached Exhibits -E).

22. On January 20, 2011, Plaintiff
Still was Enduring a Fever, Upset Stomach,
Vomitting Bile, Severe Tremors, Cold and Hot
Shakes, as well as, Toothache, Earache, Headache
and Abdominal Pains. In which, Plaintiff Stopped
Correctional Officers Joshua Clements and Jasmine
Cage, as Plaintiff was vomitting Bile, and told
them that He Needed Medical Help. Minutes
later, C/o Clements came back to Plaintiff's
Cell Bravo #405, and to Him to put on His Uniform
so that Plaintiff Could go to the Health Care Unit.
(Pl. Compl. At ¶ 29; see, Attached Exhibit -F).

23. On January 20, 2011, Plaintiff
was Escorted to the Health Care Unit's
Emergency Room, and was Evaluated by
Correctional Medical Technician ("CMT") Wendy
Olson -Foxon, who Noted and wrote in Plaintiff's
Medical Chart/Records, Plaintiff's Complaint of
Stomach Pains and Vomitting. And Noted His

Temperature at 101.9°, and how Plaintiff felt
Something pop, and that he had Hot and Cold
Shivers. (Pl. Compl. At ¶ 30; See, Attached Exhibit —
G/1).

24. On January 20, 2011, Plaintiff was
next evaluated by Medical Doctor - Dr. Ron Schaefer
who noted that Plaintiff had been in this condition
for two (2) days. Dr. Schaefer noted it was
"UNKNOWN" what caused Plaintiff's fever, and
Admitted Plaintiff into the Health Care Unit's
Infirmary for 23 hours Observation. Plaintiff
then was placed on an I.V. Liquid Treatment.
(Pl. Compl. At ¶ 31; See, Attached Exhibit — G/1 and
G/2).

25. Plaintiff Remained in the Health Care
Unit's Infirmary, and was discharged on
January 24, 2011. (Pl. Compl. At ¶ 31-37;
See, Attached Exhibits — G/1 — G/8).

26. On January 28, 2011, Defendant
Lawshea, ████ Evaluated Plaintiff And noted

in Plaintiff's Dental Chart/Records, "Swelling And Abscess" Surrounding Tooth #31, then prescribed Plaintiff 30 tablets of 500 mg Penicillin. (Pl. Compl. At ¶ 39; Pl. Compl. Ex. # DB: 00314; See Also, Attached Exhibit - B, At ¶ 10; Also See, Attached Exhibit - C, At ¶ 20).

27. On February 3, 2011, Defendant Lawshea, Finally extracted Plaintiff's Infected Tooth No. # 31. (Pl. Compl. At ¶ 40; Pl. Compl. Ex. # DB: 00314; See, Attached Exhibit - B, At ¶ 10).

28. On January 7, 2011, Defendant Lawshea, Was Working in the Dental Office At Stateville Correctional Center. (See, Attached Exhibits - B, At ¶ 4 and Ex. H/1).

29. Defendants Lawshea And Dangerfield, Do Not believe that Inmate Request Slips that Are Submitted to Stateville's Dental Clinic Are Kept in the Ordinary Course of business, And Were Unable to locate Any Request Slips From Plaintiff Other than Plaintiff's Request

-11-

Slip He Attached to His Complaint in this matter. (Pl. Compl. Ex.# DB: 00311; And see also, Attached Exhibit - I, At ¶ 4).

30. When Inmates have a medical Complaint, it is his responsibility to Contact the Corrections Medical Technician to submit a medical Request to the Health Care Unit. The CMT evaluates the Inmate's medical needs. Treatment For minor ailments may be provided At that time; Otherwise, the offender may be Referred to Physician Sick Call " OR " the Health Care Unit FOR treatment. According to the Stateville Inmate Handbook And Administrative Directive 04.03.102., (see, Attached Exhibit - J/1, ▪▪▪ J/2 ▪ And J/3).

31. Stateville Correctional Center Dental Clinic is open 8:00 a.m. - 4:00 p.m., Monday through Friday. (see, Attached Exhibits - C, At ¶ 13 And Ex. J/4, At ¶ 6(a)).

32. To Request Emergency Dental Care, the Inmate should contact the CMT in his living Unit. The Inmate will be seen as soon as possible within 24 hours or the next working day. (See, Attached Exhibit - J/4, At ¶ 6 (e)).

33. One of Defendant Lawshea's, Position Essential Functions is to serve as designated leadworker. (See, Attached Exhibit - K/1).

34. Defendant Lawshea, use and follow as a Guide the "American Public Health Association Based Categorization of Dental Patients ("APHA"), to the extent it is applicable in any given situation." (See, Attached Exhibit - C, At ¶ 8 And Ex. J/5).

35. In the ("APHA") Guide there are Nine (9) Factors categorized under Emergency Treatment : (a). Bleeding And Pain ; (b). Acute Periapical Abscess ; (c). Acute Periodontitis ; (d). Vincent Infection ; (e). Acute Gingivitis ; (f). Acute Stomatitis; (g). Fracture of Teeth ; (h). Fracture of Jaw or Jaws; And (i). Gaping

-13-

Wounds of lips and cheeks. (see, Attached Exhibits-C, at ¶ 9 and Ex. J/5, at ¶ 1).

36. Neither Defendant Lawshea or Dangerfield, remembers "classifying" Plaintiff's ▓▓▓▓ Dental Request Slip under any category pursuant to the ("APHA") Guide on January 12, 2011, and there are no documents to refresh their memories. (see, Attached Exhibit -C, at ¶ 10, 11 and 12).

37. Plaintiff's January 7, 2011, ▓▓▓ Request Slip to Dental stated and detailed, in significant part, "Emergency, Tooth Infection, Severe Pain, Headache, Earache, Toothache, Urgent Abscess, Loose Tooth, Very Painful, Need Some Emergency Attention, Some Antibiotics and Pain Medication." (Pl. Compl. at ¶ 15-16; Pl. Compl. Ex.# DB: 00311; see, Attached Exhibit -A) (compare, Attached Ex. J/5).

38. Plaintiff has been diagnosed with Periodontal Gum Disease. (Pl. Compl. Ex.# DB: 00314).

-14-

39. Although Plaintiff was scheduled to be seen by Defendant Lawshea on January 14, 2011, she did not see the Plaintiff on this day, Rather, the Appointment was Reschedule, And Defendant Lawshea does not Remember Why the Appointment was Rescheduled. (See, Attached Exhibit — B, At ¶ 8).

40. On January 14, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Sangita Garg, Christine Luce And Loretta Morse. (See, Attached Exhibit — H/2).

41. On January 18, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Christine Luce, Jeffrey Saffold And Loretta Morse. (See, Attached Exhibit — H/3).

42. On January 19, 2011, Sangita Garg And Loretta Morse, was working in the Stateville's Dental Office. (See, Attached Exhibit — H/3).

43. On January 20, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Christine Luce And Jeffrey Saffold. (see, Attached Exhibit - H/3).

44. On January 21, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Sangita Garg, Christine Luce And Loretta Morse. (see, Attached Exhibit - H/4).

45. On January 24, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Christine Luce And Mary Lake. (see, Attached Exhibit - H/4).

46. On January 25, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, As well As, Christine Luce, Loretta Morse, Jeffrey Saffold And Kenneth Brooks. (see, Attached Exhibit - H/4).

47. ON JANUARY 26, 2011, Sangita Garg, Loretta Morse and Mary Lake, was working in Stateville's Dental Office. (See, Attached Exhibit - H/4).

48. ON JANUARY 27, 2011, Christine Luce, Loretta Morse, Jeffrey Saffold, Kenneth Brooks and Mary Lake, was working in Stateville's Dental Office. (See, Attached Exhibit - H/4).

49. ON JANUARY 28, Defendant Lawshea, was working in Stateville's Dental Office, as well as, Sangita Garg, Loretta Morse, Kenneth Brooks and Mary Lake. (See, Attached Exhibit - H/4)

50. In the usual course of business it is normal for one staff member to see and treat one inmate for an abscess and pains, but more staff members may be required to treat the inmate depending on the specific issues and the situation. (See, Attached Exhibit - C, At ¶ 18).

51. Stateville Correctional Center has a program called the Offender Tracking System ("OTS"). Which is used to maintain the location and housing of Inmates. Stateville's Staff, including, But Not limited to, Stateville's Dental Personnel has access to the OTS when needed to locate an Inmate. (See, Attached Exhibit - L).

THEREFORE, Plaintiff, LESTER DOBBEY, Pro Se, Respectfully submits his Local Rule 56.1 Statement of Uncontested Facts in support of his Motion for Summary Judgment.

RESPECTFULLY,

[S] _(signature)_

LESTER DOBBEY #R-16237
Stateville C.C.
P.O. Box 112.
Joliet, JL 60434
(Pro se - Plaintiff)

Subscribed and Sworn Before Me on this, 18, day of, June, 2013.

_(signature)_ N. Butler
NOTARY PUBLIC.

OFFICIAL SEAL
TYNEER N. BUTLER-WINTERS
Notary Public - State of Illinois
My Commission Expires Jan 20, 2015

-18-

STATE OF ILLINOIS )
                  ) SS
COUNTY OF Will    )

## AFFIDAVIT

I, LESTER DOBBEY being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

That on January 7, 2011, I stopped Correctional Medical Technician ("CMT") David Barnes, while he was walking in Bravo House (Stateville C.C.) at approximately 7:30 am, and explained to him that I was experiencing an "excessive toothache." I explained to him that I had an infection surrounding the tooth, and that my gums were inflamed and leaking pus. And that I had an headache, earache with the toothache. Then I showed CMT-Barnes that my tooth was loose, and pus and blood was leaking.

CMT-Barnes then asked me to write down my information and he would grab it after he finished issuing out insulin shots to the diabetics. I wrote out a Request Slip to the Health Care Unit -Dentistry-.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: June 14, 2013

/s/
NAME: LESTER DOBBEY
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

Exhibit-A
2 OF 3.

STATE OF ILLINOIS            )
                             ) SS
COUNTY OF __Will__           )

## AFFIDAVIT

I, __LESTER DOBBEY__ being first duly sworn under oath depose and state
that the foregoing is true and correct and made upon my personal knowledge and I
am competent to testify thereto.

As an Emergency, stating that I had an infection
one Tooth, And that I was in Severe Pain with a
Headache, Earache and Toothache, which was becoming
Unbearable to deal with; and that I need some
Emergency ▮▮▮ Attention, Antibiotics and Pain Medication.
Then as CMT-BARNES came back pass my Cell # 403, I
gave him the Dental Request, which CMT-BARNES then
told me that he was going to turn the Request in as
"Urgent", and that he was going to ask the Dentist
Could they call me on up on this same day. I was
Never called on this same day January 7, 2011, by anyone
From the Dentistry Department.

Then on January 11, 2011, I Stopped.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: __June 14, 2013__

NAME: __LESTER DOBBEY__
IDOC#: __R-16237__
__Stateville__ Correctional Center
P.O. BOX __112__
__Joliet__, IL __60434__

STATE OF ILLINOIS )
        ) SS
COUNTY OF __Will__ )

## AFFIDAVIT

I, __LESTER DOBBEY__ being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

CMT-BARNES again while he was in Brand House, and asked him did he turn in my information/request to the Dentist, because I had not be called or seen by anyone, and that I was still in severe pain.

CMT-BARNES then told me he turned in my information to the Dentist and informed them that it was "Urgent" because of the Abscess, and they said they were going to call you up that day.

CMT-BARNES then further told me that when he finish his rounds he was going to see if the Dentist would call me over this same day January 11, 2011. But I was not seen by anyone on this day 1-11-2011.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: JUNE 14, 2013

/s/
NAME: LESTER DOBBEY
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LESTER DOBBEY, )
)
Plaintiff, )
)
v. )  No.    12 C 1739
)
JACQUELINE MITCHELL LAWSHEA, )  Magistrate Judge Roland
et al., )
)
Defendants. )

## DEFENDANTS' SUPPLEMENTAL ANSWERS TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Defendants JACQUELINE MITCHELL LAWSHEA and MICHAEL DANGERFIELD,

by their attorney LISA MADIGAN, Attorney General of Illinois, pursuant to the order of court

dated December 10, 2012, hereby supplement their answers to certain of Plaintiff's First Set of

Interrogatories as follows:

• 4.       Defendant Lawshea, identify whether or not you were at work in Stateville's
Dentistry on January 7, 2011. If yes, name all persons who were present working in the
Dentistry with you. State their first and last names.

**ANSWER**:     I was working on January 7, 2011. See Stateville's response to the subpoena for
remaining information.

5.       Defendant Lawshea, identify whether or not you received plaintiff's "Emergency-
Request to Health Care Unit- Dentistry" on January 7, 2011, regarding plaintiff having a tooth
infection, headache, earache, and toothache, requesting for emergency attention. If no, state
persons name in Dentistry who was responsible for logging inmates request on 1-7-2011. State
their first and last name.

**ANSWER**:     I do not remember receiving any emergency request on January 7, 2011 from the
Plaintiff, and I am unaware of any documents which would refresh my memory on this issue. I
do not know who received such requests in the HCU/Dental Office at that time, and I am
unaware of any documents which would refresh my memory on this issue.

6.       Defendant Lawshea, identify whether or not you received a "Health Care Unit
Referral for the Dental Clinic - Reporting of a Abscess" for plaintiff, written and requested by a

Correctional Medical Technician David Barnes on January 7, 2011. If no, state the persons first and last names in Dentistry who was responsible for logging and scheduling an appointment for such a "Urgent-Referral to the Dental Clinic.

**ANSWER:**    I do not remember receiving any referral for the Dental Clinic for the Plaintiff on January 7, 2011, and I am unaware of any documents which would refresh my memory on this issue. I do not know who received such requests in the HCU/Dental Office at that time, and I am unaware of any documents which would refresh my memory on this issue.

       7.    Defendant Lawshea, identify whether or not you were responsible for logging and scheduling appointments or re-scheduling appointments for inmates at Stateville.

**ANSWER:**    I was not responsible for logging or scheduling appointments, but at times I would note in the inmate's file that appointments were re-scheduled.

● 8.    Defendant Lawshea, identify whether or not you ever were the dentist scheduled to evaluate, examine and/or treat plaintiff on January 14, 2011. If yes, state whether or not did you see, evaluate, examine and/or treat plaintiff on said day. If you did not see, evaluate, examine and/or treat plaintiff, state the reasons why plaintiff was not seen, evaluated, examined and/or treated on January 14, 2011.

**ANSWER:**    According to the dental records which refreshed my memory, the Plaintiff was scheduled to be seen on January 14, 2011 in the HCU/Dental Office, but the appointment was rescheduled to January 25, 2011. I did not see the Plaintiff on January 14, 2011 and I do not remember why the appointment was rescheduled. I am unaware of any documents that would refresh my memory on this issue.

● 9.    Defendant Lawshea, identify, by date, the first time you learned that plaintiff was complaining of a tooth abscess/infection and/or complications during the month of January 2011.

**ANSWER:**    According to the dental records which refreshed my memory, I first learned that the Plaintiff was complaining of a tooth issue on January 12, 2011.

● 10.    Defendant Lawshea, identify, by date, in the month of January 2011, what did you do to treat plaintiff's tooth abscess/infection and/or complications after learning of it.

**ANSWER:**    According to the dental records which refreshed my memory, I saw the Plaintiff on January 28, 2011 and prescribed him penicillin. I also saw the Plaintiff on February 3, 2011 and extracted a tooth.

● 14.    Defendant Dangerfield, identify, whether or not did you work in Stateville Health Care Unit on January 14, 2011, as the Doorman Officer. If no, state where were you stationed in Stateville on January 14, 2011, and/or assigned to work.

**ANSWER:**    After refreshing my memory, I was working at the HCU on January 14, 2011.

15.    Defendant Dangerfield, identify, whether or not did you "sign in" plaintiff at the Health Care Unit Door upon entrance on January 14, 2011.

**ANSWER:**    I do not remember, and I am unaware of any documents which would refresh my memory on this issue.

16.    Defendant Dangerfield, identify, whether or not was plaintiff scheduled for dental according to the H.C.V. Door "Sign-In Sheet", on January 14, 2011.

**ANSWER:**    The Plaintiff's dental records state that he was originally scheduled to be seen at the HCU/Dental Office on January 14, 2011, but that appointment was rescheduled to January 25, 2011.

• 17.    Defendant Dangerfield, identify, whether or not would you have been the person to inform plaintiff if his appointment and/or call-pass was cancelled.  If yes, would you have also informed plaintiff "why" his appointment and/or call-pass was cancelled on 1-14-2011.

**ANSWER:**    I might have identified the Plaintiff if he was being keyed out of his cell or if I was working the door making sure that the right inmate was leaving the unit.  If the appointment/call-pass was canceled I would know the reason at the time for the cancelation, but I do not remember in this case.  I am not aware of any documents that would refresh my memory on this issue.

• 18.    Defendant Dangerfield, identify, whether or not would you have allowed plaintiff to talk to any of the Health Care Unit's Medical Personnel regarding any medical issues he was having, such as, a toothache and pain without an appointment and/or call-pass to see such medical personnel, or would you force him to leave.

**ANSWER:**    I would have followed policy and procedure regarding medical treatment of inmates, which is to let them into the HCU if it is an emergency or if they have an appointment. I did not prevent the Plaintiff from talking to any person, but inmates are not allowed to stay in the HCU bullpen area without a valid appointment in the HCU, and if I remember correctly the Plaintiff was returned to his cell house when it was discovered that his appointment was rescheduled.  When he was returned to his cell house, he could have asked to see his counselor or medical personnel.

• 19.    Defendant Dangerfield, identify, whether or not did you allow plaintiff to talk to any medical personnel on January 14, 2011, when his dental appointment was cancelled, after he explained to you that he had an toothache and pain.

**ANSWER:**    I would have followed policy and procedure regarding medical treatment of inmates, which is to let them into the HCU if it is an emergency or if they have an appointment. I did not prevent the Plaintiff from talking to any person, but inmates are not allowed to stay in the HCU bullpen area without a valid appointment in the HCU, and if I remember correctly the Plaintiff was returned to his cell house when it was discovered that his appointment was

rescheduled. When he was returned to his cell house, he could have asked to see his counselor or medical personnel.

20.    Defendant Dangerfield, identify, whether or not do you recall plaintiff ever speaking to you at any time during the 7 am to 3 pm shift on January 14, 2011. If you do not recall any specific conversation with plaintiff, would that exclude any fact that he could have spoken with you, but you just don't remember, on January 14, 2011.

**ANSWER:**    I do not remember whether the Plaintiff spoke to me on January 14, 2011 or not, and I am unaware of any documents which would refresh my memory.

Exhibit-B

## DECLARATION

Under the penalties pursuant to the perjury laws of the United States of America, I hereby declare that the statements in the Supplemental Answers to Interrogatories are true and correct.

1-2-13
Date

Michael Dangerfield

## DECLARATION

Under the penalties pursuant to the perjury laws of the United States of America, I hereby declare that the statements in the Supplemental Answers to Interrogatories are true and correct.

_1-3-13_
Date

Jacqueline Mitchell-Lawshea

Exhibit -C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LESTER DOBBEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    12 C 1739 |
| | ) | |
| JACQUELINE MITCHELL LAWSHEA, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' ANSWERS TO PLAINTIFF'S
### SECOND SET OF INTERROGATORIES

Defendants JACQUELINE MITCHELL LAWSHEA and MICHAEL DANGERFIELD,

by their attorney LISA MADIGAN, Attorney General of Illinois, hereby answer Plaintiff's

Second Set of Interrogatories as follows:

1.    Identify all persons providing any information relied upon in answering in these interrogatories; state the person first and last name.

**ANSWER:**    Objection to the extent this interrogatory calls for information privileged under the attorney-client privileged.  Subject to this objection, and without waiving it, the Defendants answered these interrogatories.

2.    State in detail, whether or not Emergency Dental Treatment is available to the inmates of Stateville C.C. 24 hours a day.

**ANSWER:**    There is not a dentist at the facility 24 hours a day.  If there is an actual dental emergency, this situation is dealt with like all other medical emergencies.  One option, in life-threatening situations, is for the inmate to be taken to an outside hospital for treatment.  Another option is for the inmate to be scheduled to see a dentist at the facility during the next available appointment.

3.    State in detail, whether or not are "All" dental documentations filed in the dental section of an inmates medical records.

Exhibit -C

**ANSWER:**    Objection to the vagueness of the term "all," and object that this interrogatory seems to ask the Defendants to speculate how all employees at Stateville document issues. Subject to these objections, and without waiving them, Defendant Lawshea states that she documents in an inmate's dental chart every time she treats an inmate. Defendant Dangerfield is not a dentist, does not document in an inmate's dental chart, and has no knowledge of how dentists document their treatment.

4.    State in detail, whether or not are the dental documentations in plaintiff's medical file, depicted as an accurate account of notes, whether your own notes or other dental personnel notes.

**ANSWER:**    Objection. This interrogatory is vague to the point the Defendants do not know what information the Plaintiff seeks.

5.    State in detail, whether or not are inmate request slips "suppose to be maintained" in their medical records as a "requirement, policy, or procedure" for any medical or dental services.

**ANSWER:**    There is no policy to the Defendants' knowledge that requires inmate request slips for medical or dental services to be maintained.

6.    State in detail, "are inmate request slips maintained," in inmate medical records. If no, state in detail "why not."

**ANSWER:**    There is no policy to the Defendants' knowledge that requires inmate request slips for medical or dental service to be maintained. The Defendants are not policy makers for the Department and have no knowledge "why not."

7.    State in detail, are you under "any" contract or written agreements as a physician/dentist.

**ANSWER:**    Objection. This interrogatory is vague to the point the Defendants do not know what information the Plaintiff seeks.

8.    State in detail, whether or not as a dentist, do you use and follow the American Public Health Association Based Categorization of Dental Patients ("APHA"), as a Guide to providing dental care, and for the establishment of priorities to identity and treat oral conditions.

**ANSWER:**    Defendant Lawshea follows this guide, to the extent it is applicable in any given situation, and to the extent that it is purely a guide. Defendant Dangerfield is not a dentist and

2

has no knowledge of this guide.

• 9.    State in detail, how many categories are in the ("APHA") Guide that are considered for emergency treatment.

**ANSWER:**    Defendant Lawshea states that to the best of her knowledge and memory the guide lists nine factors that may be considered for emergency treatment in certain circumstances. Defendant Dangerfield is not a dentist and has no knowledge of this guide.

• 10.    State in detail, did plaintiff's January Request Slip to Dental complaining of an "infection in a tooth, severe pain, headache, earache and toothache," as well as, the CMT's Note of "Abscess and Pain", classify as "Emergency Treatment", pursuant to the (APHA) based categorization of dental patients.

**ANSWER:**    The Defendants do not remember the Request Slip, but based upon the dental records from January, 2011, Defendant Lawshea states the Plaintiff's complaints were not emergent in nature.

• 11.    State in detail, on January 12, 2011, what category did you classify plaintiff's dental request slip of complaints.

**ANSWER:**    Neither Defendant remembers "classifying" the request slip at that time, and there are no documents that the Defendants are aware of that would refresh the Defendants' memories.

• 12.    State in detail, whether or not was your classification of plaintiff's dental request on January 12, 2011, adequate and/or proper for his treatment plan.

**ANSWER:**    Neither Defendant remembers "classifying" the request slip at that time, and there are no documents that the Defendants are aware of that would refresh the Defendants' memories.

• 13.    State in detail, whether or not if the Stateville C.C. Dental Clinic is open from 8:00 am to 4:00 pm, Monday through Friday.

**ANSWER:**    In the usual course of business, the dental clinic is open from 8:00 a.m. to 4:00 p.m., Monday through Friday.

14.    State in detail, what was the proper "standard time-frame", plaintiff should have been treated after you learned that he was suffering from a tooth abscess and pain.

3

**ANSWER:**    Defendant Lawshea states that there is no standard time frame for treating the plaintiff's issues.  Defendant Dangerfield is not a dentist and has no basis upon which to answer this interrogatory.


● 15.    State in detail, were you, as well as, any other dentistry personnel present at the Stateville C.C. Dental Clinic, on and between January 17th, 18th, 19th, 20th, 21st, 24th, 25th, 26th, 27th, and the 28th, 2011.  If yes state their first and last names, as well as, the specific date they were present.

**ANSWER:**    See letter from defense counsel to Plaintiff dated December 17, 2012 which responded to a subpoena to Stateville Correctional Center for this information, as modified by Judge Rowland's order dated December 10, 2012.


16.    For clarification, you stated in your supplemental answer to paragraph #9, that "you first learned that the plaintiff was complaining of a tooth issue on January 12, 2011," state in detail, what were plaintiff's tooth issues that you say you learned of; and state whether or not does plaintiff's medical records reflect an accurate account of what you learned.

**ANSWER:**    Defendants have no memory of this situation outside of the dental records.


·   17.    For clarification, according to the plaintiff's medical records, (Pl. Compl. at Ex. #4), on January 14, 2011, you noted that plaintiff was rescheduled due to staff shortage.  State in detail whether or not that is a true and correct note in plaintiff's medical records.

**ANSWER:**    Defendants have no memory of this situation outside of the dental records.


● 18.    State in detail, what is the normal amount of staff and/or dentist, required and/or needed to see and treat an inmate for an abscess and pains.

**ANSWER:**    The usual course of business is for one staff member to see one inmate at a time, but more staff members may be required to treat the inmate depending on the specific issues and the situation.


● 19.    For clarification, you stated in your supplemental answer to paragraph #8, that, "Plaintiff was rescheduled to January 25, 2011, after his appointment for January 14, 2011 was cancelled.  State in detail, whether or not was plaintiff actually seen or treated for his tooth issues on January 25, 2011.  If plaintiff, was not seen or treated, state in detail, "why" plaintiff was not seen and treated.

**ANSWER:**    Defendants have no memory of this situation outside of the dental records.  The

Exhibit-C

dental records state "rescheduled due to cell location has changed. No longer in infirmary."

20.     For clarification, your stated in your supplemental answer to paragraph #10, that "you prescribed plaintiff with penicillin. State in detail, what was your diagnosis of plaintiff's tooth issue, for your prescription of penicillin, on January 28, 2011.

**ANSWER:**  Defendant Lawshea has no memory of this situation outside of the dental records. The record for January 28, 2011 states, "Exam patient. Patient reports history of swelling & abscess. #31. Rx PCN [Penicillin]. 3 txs daily. 30 tablets. (No. Extract #31, February 3, 2011)." Defendant Dangerfield is not a dentist and did not diagnose the Plaintiff.

21.     For clarification, based on your supplemental answer to paragraph #10, where you stated that, "on January 28, 2011 you treated plaintiff's abscess/infection of his tooth, by prescribing him Penicillin." State in detail, "what prevented you from prescribing plaintiff penicillin on January 12th, 13th, 14th, 17th, 18th, 19th, 20th, 21st, 24th, 25th, 26th, orth 27th, 2011," when you were clearly aware that plaintiff was suffering from the tooth abscess and pains.

**ANSWER:**    Objection to the conclusion that Defendant Lawshea was clearly aware that Plaintiff was suffering from a tooth abscess and pains on the dates listed. Objection to the conclusion that Defendant Dangerfield could prescribe medication.

22.     State in detail, the approximate time, it takes, and/or, it took you, on January 28, 2011, to examine plaintiff's tooth abscess, and write the prescription for penicillin.

**ANSWER:**    Defendant Lawshea has no memory of this appointment outside of the dental records, and the records do not state how long it took. Defendant Dangerfield did not examine Plaintiff's teeth or prescribe penicillin.

23.     State in detail, whether or not was plaintiff given the penicillin on January 28, 2011, on-site, at the dental clinic. If he did not receive the penicillin, on-site, how was he provided the penicillin.

**ANSWER:**    The Defendants do not know how the Plaintiff received his penicillin. The Defendants did not personally give the penicillin to the Plaintiff. The Defendants did not witness how the Plaintiff received his penicillin.

24.     State in detail, whether or not you possessed the authority to have sent penicillin to plaintiff's cell by a correctional medical technician, between January 12th through the 27th, 2011.

5

Case: 1:12-cv-01739 Document #: 44 Filed: 06/26/13 Page 33 of 56 PageID Exhibit - C

**ANSWER**: Neither Defendant had the authority to have penicillin sent to an inmate's cell during the time period indicated.

25. Defendant Dangerfield, for clarification, you stated in your supplemental answer to paragraph #19, that, "when plaintiff was returned to his cellhouse on January 14, 2011, plaintiff could have asked to see his counselor or medical personnel." State in detail, whether or not did you inform and/or advise plaintiff to do so; as well as, who would plaintiff had to ask to see his counselor or medical personnel, and is that persons job description any different from your job description as a correctional officer.

**ANSWER**: Defendant Dangerfield does not remember whether he informed the Plaintiff that he could ask to see his counselor or medical personnel. However, all inmates receive the Stateville Orientation Manual which states that inmates can ask any staff to let their counselor or a medical technician know they need something. In addition, staff picks up sick call requests daily from inmates in all cell houses. Defendant Dangerfield's job description is basically the same as most, but not all, Correctional Officers, but it is not the same as medical staff, medical technicians, counselors, sergeants, or other employees who are not employed as Correctional Officers.

6

## DECLARATION

Under the penalties pursuant to the perjury laws of the United States of America, I hereby declare that the statements in the Answers to the Second Set of Interrogatories and the Responses to the First Set of Requests for Production are true and correct.

2-25-13
Date

Jacqueline Mitchell-Lawshea

## **DECLARATION**

Under the penalties pursuant to the perjury laws of the United States of America, I hereby declare that the statements in the Answers to the Second Set of Interrogatories and the Responses to the First Set of Requests for Production are true and correct.

2-27-13
Date

Michael Dangerfield

Exhibit-D
1 of 2

STATE OF ILLINOIS     )
                      ) SS
COUNTY OF __Will__    )


### AFFIDAVIT

I, __LESTER DOBBEY__ being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

That on January 14, 2011, I went to Stateville's Health Care Unit for my Scheduled Appointment, which a Correctional Officer - Michael Dangerfield, was the Health Care Unit's Doorman who opened the door and placed me in the Health Care Units Bullpen.

Then a minute or two later, C/O Dangerfield came back to the Bullpen and told me my pass was cancelled. I then asked him, "why?" C/O Dangerfield told me that he didn't know why. I then showed him my tooth being infected and asked him could he atleast go get some medical personnel because I was in severe pain, and see if I could get some pain medication.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: __June 14, 2013__

/s/
NAME: __Lester Dobbey__
IDOC#: __R-16237__
__Stateville__ Correctional Center
P.O. BOX __112__
__Joliet__, IL __60434__

STATE OF ILLINOIS )
)-SS
COUNTY OF __Will__ )

## AFFIDAVIT

I, __LESTER DOBBEY__ being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

C/o Dangerfield then told me that I couldn't be seen by medical personnel if I didn't have a Call Pass, and that my Ride back to the cell-house was waiting. I then was sent out the Health Care Unit by C/o Dangerfield and escorted back to Bravo House by another Correctional Officer. Which I was still in serious pain and my tooth was bleeding, pussing and swollen in the gums.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: June 14, 2013

/s/
NAME: LESTER DOBBEY
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

Exhibit - E

STATE OF ILLINOIS )
                  ) SS
COUNTY OF  Will   )

## AFFIDAVIT

I, LESTER DOBBEY being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

That on January 19, 2011, I began to Experience a fever and upset Stomach, which pained me to the point that I began to vomit and felt something pop in my stomach. And as time passed throughout this night the pain became more and more unbearable, and I began to vomit bile, and had severe tremors, and Experienced cold and hot shakes.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: June 14, 2013

/s/
NAME: LESTER DOBBEY
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet, IL 60434

STATE OF ILLINOIS )
)SS
COUNTY OF Will )

## AFFIDAVIT

I, LESTER DOBBEY being first duly sworn under oath depose and state that the foregoing is true and correct and made upon my personal knowledge and I am competent to testify thereto.

That on January 20, 2011, I was still encountering a fever and upset stomach, vomiting bile, severe tremors, cold and hot shakes, as well as toothache, earache, headache and abdominal pains, from the day before.

As Correctional Officers - Joshua Clements and Jasmine Cage, walked down 4 Gallery of Bravo House ("Stateville C.C.") to key out for chow, I stopped them as I continued to vomit bile, and told them that I needed medical help. Minutes later, C/O Clements came back to my Cell #405, and told me to put on my uniform and that I was going over to the Stateville C.C. Health Care Unit.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1.09, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: June 14, 2013

/s/
NAME: LESTER DOBBEY
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet , IL 60434



# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

December 18, 2012

Mr. Lester Dobbey, R16237
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois  60434

      Re:    Dobbey v. Randle, et al.
              12 C 1739

Dear Mr. Dobbey:

      In response to Judge Rowland's order dated December 10, 2012, please be advised that to the extent that the Defendants were able to determine, the following individuals were working in the Dental Office on the following days:

| | |
|---|---|
| January 7, 2011 | Christine Luce<br>Jacqueline Mitchell-Lawshea |
| January 8, 2011 | None (Saturday) |
| January 9, 2011 | None (Sunday) |
| January 10, 2011 | Christine Luce<br>Jacqueline Mitchell-Lawshea |
| January 11, 2011 | Loretta Morse<br>Jeffrey Saffold<br>Christine Luce<br>Jacqueline Mitchell-Lawshea |
| January 12, 2011 | Sangita Gang<br>Loretta Morse<br>Christine Luce<br>Jacqueline Mitchell-Lawshea |

500 South Second Street, Springfield, Illinois  62706 • (217) 782-1090 • TTY: (877) 844-5461 • Fax: (217) 782-7046
100 West Randolph Street, Chicago, Illinois  60601 • (312) 814-3000 • TTY: (800) 964-3013 • Fax: (312) 814-3806
601 South University Avenue, Suite 102, Carbondale, Illinois  62901 • (618) 529-6400 • TTY: (877) 675-9339 • Fax: (618) 529-6416

January 13, 2011     Loretta Morse
Jeffrey Saffold
Jacqueline Mitchell-Lawshea

January 14, 2011     Sangita Gang
Christine Luce
Loretta Morse
Jacqueline Mitchell-Lawshea

Sincerely,

KEVIN LOVELLETTE
Assistant Attorney General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-3720



## OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

March 22, 2013

Mr. Lester Dobbey, R16237
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

      Re:    Dobbey v. Lawshea, et al.
             12 C 1739

Dear Mr. Dobbey:

In response to your letter dated March 14, 2013, enclosed is a copy of the Defendants' responses to the Request for Production. In further response to Interrogatory 4 of the Second Set of Interrogatories, Dr. Lawshea's dental notes are accurate to the best of her knowledge, but neither Defendant can attest to notes made by other individuals in the medical file. In further response to Interrogatory 7, to the extent the Plaintiff seeks to know whether Dr. Lawshea has a contract with either Wexford or the Illinois Department of Corrections to perform dental services, she does not. In further response to Interrogatory 15, according to the records, the following individuals were working in the Dental Office on the following days:

January 17, 2011        None

January 18, 2011        Christine Luce
                          Jacqueline Mitchell-Lawshea
                          Jeffrey Saffold
                          Loretta Morse

January 19, 2011        Sangita Garg
                          Loretta Morse

January 20, 2011        Christine Luce
                          Jacqueline Mitchell-Lawshea
                          Jeffrey Saffold

January 21, 2011    Sangita Garg
Christine Luce
Jacqueline Mitchell-Lawshea
Loretta Morse

January 22, 2011    None

January 23, 2011    None

January 24, 2011    Christine Luce
Jacqueline Mitchell-Lawshea
Mary Lake

January 25, 2011    Christine Luce
Jacqueline Mitchell-Lawshea
Loretta Morse
Jeffrey Saffold
Kenneth Brooks

January 26, 2011    Sangita Garg
Loretta Morse
Mary Lake

January 27, 2011    Christine Luce
Loretta Morse
Jeffrey Saffold
Kenneth Brooks
Mary Lake

January 28, 2011    Sangita Garg
Jacqueline Mitchell-Lawshea
Loretta Morse
Kenneth Brooks
Mary Lake

Finally, in supplemental response to Judge Rowland's order dated December 10, 2012, be advised that the following individuals were also working in the Dental Office on the following days:

January 7, 2011    Kenneth Brooks
Mary Lake

January 10, 2011    Kenneth Brooks
Mary Lake

| | |
|---|---|
| January 11, 2011 | Kenneth Brooks |
| | Mary Lake |
| January 12, 2011 | Mary Lake |
| January 13, 2011 | Kenneth Brooks |

Sincerely,

KEVIN LOVELLETTE
Assistant Attorney General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 814-3720

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LESTER DOBBEY,                    )
                                  )
                    Plaintiff,    )
                                  )
        v.                        )    No.    12 C 1739
                                  )
JACQUELINE MITCHELL LAWSHEA,      )
et al.,                           )
                                  )
                    Defendants.   )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendants JACQUELINE MITCHELL LAWSHEA and MICHAEL DANGERFIELD,

by their attorney LISA MADIGAN, Attorney General of Illinois, hereby answer Plaintiff's First

Set of Request for Production of Documents as follows:

1.     All documents review and/or relied upon in answering plaintiff's First and Second
Sets of Interrogatories.

**RESPONSE:** See previously-produced dental records and letter from defense counsel to
Plaintiff dated December 17, 2012.

2.     Any and all, written agreements and/or contracts, defendant Lawshea, may be
under to provide dental services, under Wexford.

**RESPONSE:** None.

3.     Any and all, documents that describes defendant Lawshea's, Job Description.

**RESPONSE:** See attached job description.

4.     Any and all, request slips plaintiff filed and/or submitted to Stateville's Dental
Clinic in the month of January 2011.

**RESPONSE**: The Defendants do not believe request slips are kept in the ordinary course of business, and the Defendants have been unable to locate any request slips from the Plaintiff other than what the Plaintiff purports to be his request slips as he attached to his Complaint in this matter.

5.     Any and all, medical referrals, made to the dental clinic at Stateville in the month of January 2011.

**RESPONSE**: Objection. This request seeks protected health information of third parties which should remain confidential under HIPAA. Objection. This request seeks information that is not reasonably tailored to lead to admissible evidence. Objection. The term "referrals" is vague.

6.     Any and all, dental care, procedures, policies, operations, codes, rules, manuals, handbooks, standards, for dental physicians, dental assistants, and/or nurse practitioners, from Wexford Health Sources, Inc., which are kept in Stateville's Health Care Unit or Dentistry.

**RESPONSE**: Defendants are not aware of any Wexford Health Sources, Inc. policies, procedures, operations, codes, rules, manuals, handbooks or standards for dental care that are kept at Stateville.

7.     Any and all, audits of Stateville's Dental Services and/or dental care provided at Stateville from the year 2010 to present.

**RESPONSE**: Objection. The word "audits" is vague to the point that the Defendants do not know what information the Plaintiff seeks. Objection. This request is not reasonably tailored to lead to admissible evidence.

8.     Any and all, "Signed Attestation Pages" by defendant Lawshea, agreeing to follow and/or have read Stateville's and Wexfords, policies, procedures, protocols, standards, manuals, handbooks and operations. For each page and signature, please clarify where and/or what it is from.

**RESPONSE**: None.

9.     Any and all, quality assurance programs of Stateville for dental care, from the year 2010 to present.

**RESPONSE**: Objection. The term "quality assurance programs" is vague to the point the

2

Exhibit - I

Defendants do not know what information the Plaintiff seeks. Objection. This request is not reasonably tailored to lead to admissible evidence. This lawsuit involves a period of time in January, 2011, when the Plaintiff alleges he did not receive proper dental care; it does not involve on-going medical treatment issues from 2010 to the present. The records requested from 2010 to the present involve medical issues outside of dental treatment which are not present in the instant litigation.

10.     Any and all, quality improvement meeting minutes from the year 2010 to present, for dental care.

**RESPONSE**: Objection. This request seeks information that is not reasonably tailored to lead to admissible evidence. This lawsuit involves a period of time in January, 2011, when the Plaintiff alleges he did not receive proper dental care; it does not involve on-going medical treatment issues from 2010 to the present. The records requested from 2010 to the present involve medical issues outside of dental treatment which are not present in the instant litigation.

11.     Any and all, annual performance and/or peer review at Stateville and Wexford for defendant Lawshea from the year 2010 to present.

**RESPONSE**: Objection. Performance reviews contain information which should remain confidential for personal safety and security reasons. Objection. The request for performance reviews is not reasonably tailored to lead to admissible evidence. Subject to these objections, and without waiving them, Defendant Lawshea states that there are no performance reviews conducted by Wexford, and there are no peer reviews.

12.     Any and all, quarterly meeting minutes Stateville Dental Personnel had with Wexford, IDOC, and/or Stateville's Administration from the year 2010 to present.

**RESPONSE**: None.

3



# OFFICE OF THE ATTORNEY GENERAL
### STATE OF ILLINOIS

**Lisa Madigan**
ATTORNEY GENERAL

November 30, 2012

Mr. Lester Dobbey, R16237
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434

      Re:    Dobbey v. Randle, et al.
             12 C 1739

Dear Mr. Dobbey:

      In response to the subpoena served upon Stateville requesting policies for obtaining medical, dental or mental health services, Stateville objects to the subpoena to the extent it seeks documents that are not reasonably tailored to lead to admissible evidence because the Complaint in this matter does not allege any claims regarding medical or mental health services. In response to the request for dental policies, enclosed are three pages from the Stateville Offender Handbook and Administrative Directive 04.03.102.

                      Sincerely,

                      KEVIN LOVELLETTE
                      Assistant Attorney General
                      General Law Bureau
                      100 W. Randolph, 13th Floor
                      Chicago, Illinois 60601
                      (312) 814-3720

offers an insight into preparing for employment after release. This program is offered through Joliet Junior College, Joliet, Illinois.

## G. Health Care Services

This facility provides a wide range of healthcare services to all offenders. The services include treatment of acute injuries and other illnesses, treatment of chronic diseases, and health maintenance measures. The healthcare staff consists of physicians, nurse practitioner, nurses, Corrections Medical Technicians (CMT's), dentists, dental hygienists, pharmacy staff, psychiatrists and psychologists. Also, medical specialists also provide care on an as needed basis. The Director of Nursing (DON) is the supervisor of the nursing staff and the Health Care Unit Administrator (HCUA) is the administrator of the Health Care Unit and the Medical Director supervises the physicians and overall healthcare delivery. The offender's assigned CMT is the initial contact person for most health related concerns; they are available seven (7) days a week.

### 1. Sick Call

The cellhouse or living unit will have an assigned Correctional Medical Technician (CMT) seven (7) days a week. Their arrival is announced in the cellhouse and living units. If the offender has a medical complaint, it is his responsibility to contact the Corrections Medical Technician in your living area or to submit a medical request form to the Health Care Unit. All Living Areas have this form available. The offender should complete the form and send it to the Health Care Unit. The CMT will then evaluate the offender's medical needs. Treatment for minor ailments may be provided at that time; otherwise, the offender may be referred to physician sick call or the Health Care Unit for treatment.

### 2. Chronic Illness Clinic

a. If an offender has a long term medical condition which requires them to see a doctor on a frequent basis, the offender may be assigned to one of the following clinics:

- Asthma Clinic: for patients with long-term respiratory/breathing problems requiring medication.

- Diabetic Clinic: for patients with difficulties regulating the amount of sugar in their blood.

- Cardiac/Hypertension Clinic: for patients with high blood pressure or known heart disease.

- Seizure Clinics: for patients with a history of having seizure disorders.

- HIV Disease Clinics: for patient monitoring of this disease

- TB Clinics: for patients with this disease.

- Hepatitis C Clinics

- General Medicine Clinics: these clinics are held for multiple chronic illnesses.

- Everyone scheduled for chronic illness clinic **must** be seen by the doctor. Refusals are not allowed unless the offender speaks with the doctor and inform him of the desire to refuse.

b. The following are clinics that a CMT or a Nurse can refer an offender to:

(1)    Eye Clinic: for patients with impaired vision needing eyeglasses or follow-up.

(2)    TB Clinic: for patients with a positive TB test who are on INH therapy. A nurse will see anyone on INH therapy monthly.

3.    **Other Valuable Services**

a.    Laboratory: The laboratory is within the hospital area and is equipped to collect any blood, urine or stool specimens that have been ordered.

b.    X-Ray: The X-Ray department is located within the hospital area. X-Rays will be done by doctor's orders.

4.    **Inpatient Services**

a.    Infirmary: The Health Care Unit has an area for offenders who are too sick to remain in their cellhouse or living unit, or for observation. The offender is admitted to the infirmary by orders of a physician, psychiatrist, or nurse practitioner, dentist, licensed psychologist, or social worker. Some of the rules and regulations may be different, depending on the status of the offender. The infirmary is a hospital within Stateville Correctional Center, where the nurses and doctors are responsible for the offender's health care. It is the offender's responsibility to comply with the prescribed treatment.

b.    If the offender becomes seriously ill or injured, he may be sent to an outside hospital for treatment. However, this is rare, as most injuries or illnesses can be treated in the Health Care Unit. If the offender is admitted to an outside hospital, he will be instructed as to rules regarding visits, mail privileges, etc.

5.    **Emergency Care**

a.    In the event an offender is seriously injured or ill, the Health Care Unit is equipped with personnel and equipment to recognize and treat life-threatening or serious problems.

b.    $2 Co-Payments for Health Care Services

c.    This facility requires each offender requesting non-emergency Health Care Services to pay a $2 co-payment to the Department of Corrections. Offenders who request medical services will be required to sign a trust voucher DOC 0296, Offender Authorization for Payment as payment for the medical services. Offenders, who do not have sufficient funds and are deemed indigent, will not be credited or responsible for the $2.00 co-pay.

d.    When offenders need health services, they should contact the correctional medical technician who will provide treatment according to treatment protocol orders or, if necessary, refer them to a physician.

e.    Chronic Illness Clinics (as defined by AD 04.03.105) are exempt from the Co-Pay. Offenders will not be subject to the co-payment for follow-up visits ordered by the physician or dentist who is employed by or contracts with the Department of Corrections.

6. **Dental Clinic Orientation**

   a.   The Stateville Correctional Center Dental Clinic is open 8:00 a.m. – 4:00 p.m., Monday through Friday.

   b.   Orientation residents will receive a screening exam as soon as possible. Any dental care needed will be scheduled at a subsequent date.

   c.   You will be notified when an appointment has been scheduled. You are expected to be on time for your appointment. Late arrivals will be rescheduled as time becomes available. Missed appointments will not be rescheduled without a valid reason.

   d.   Routine dental care such as fillings, extractions, partials, and dentures may be requested through the CMT in the offender's living unit. The offender will be scheduled for these procedures as the schedule permits. (To receive a partial and/or denture, three or more teeth should be missing from the arch) If the prosthesis is stolen, lost or damaged due to the offender's negligence, replacements is at the offender's expense. Residents entering the IDOC without teeth must pay the Lab cost to have them fabricated.

   e.   To request emergency care, the offender should contact the CMT in his living unit. He will be seen as soon as possible within 24 hours or the next working day, depending on the nature of the emergency.

   f.   Dental cleanings are available annually. An offender may request to have his name placed on the clean log nine (9) months after the last cleaning appointment. The waiting time on the clean log is approximately 3 months.

7. **AIDS**

The Acquired Immune Deficiency Syndrome (AIDS) is an illness caused by a virus that attacks the immune system that is the body's natural defense against disease. Damage to the immune system leaves the body vulnerable to secondary illnesses that can be fatal. The virus that causes AIDS is called the Human Immunodeficiency Virus or HIV. This virus attacks and apparently destroys a certain kind of white blood cell called a T lymphocyte or "helper" cell. When the number of T lymphocytes is reduced, the immune system does not work well.

   a.   HIV may be present in the body for a short or long time before illness is diagnosed. Early symptoms may include such things as:

- Extreme fatigue
- Fever and night sweats
- Rapid and unexplained weight loss
- Enlarged lymph glands in the neck, armpits, or groin
- Chronic diarrhea

   b.   The following illnesses are associated with the development of AIDS:

- Pneumocystis carinii pneumonia
- Kaposi's sarcoma
- Lymphomas
- Toxoplasmosis
- Cryptococcosis
- Others

41

| ADMINISTRATIVE DIRECTIVE | Effective | 9/1/2002 | Page | 6 of 6 | Number | 04.03.102 |
|---|---|---|---|---|---|---|
| | Amended | 11/1/2011 & 1/1/2012 | | | | |

## ATTACHMENT A
### American Public Health Association
### Based Categorization of Dental Patients (APHA)

Dentist and dental hygienists shall use the following APHA based categorization of dental patients as a guide to providing dental care and for the establishment of priorities to identify and treat oral conditions.

1.  **Category I - Emergency Treatment**

    a.  Bleeding and pain.

    b.  Acute periapical abscess.

    c.  Acute periodontitis.

    d.  Vincents infection.

    e.  Acute gingivitis.

    f.  Acute stomatitis.

    g.  Fracture of teeth (also see 3.c.).

    h.  Fracture of jaw or jaws.

    i.  Gaping wounds of lips and cheeks.

2.  **Category II**

    a.  An oral condition, if left untreated, that would cause bleeding or pain in the immediate future.

    b.  An oral infection of an oral condition which, if left untreated, would become acutely infected.

    c.  An oral condition such as edentulousness or missing upper or lower anterior teeth which presents a physical problem with mastication or a psychosocial problem with the offender's sense of well being, confidence, and adjustment.

    d.  An undiagnosed or suspected oral condition such as ulcerative lesion or growth of tissue.

3.  **Category III**

    a.  The presence of medium to large non-painful carious lesions.

    b.   A localized gingival involvement.

    c.  Class II, Class III, or Class IV fracture anterior tooth or teeth.

    d.  The presence of temporary, sedative, or intermediate restorations which have deteriorated extensively.

    e.  Broken or ill fitting prosthetic appliance.

4.  **Category IV**

    a.  Small carious lesions which radiographically present no imminent danger to the pulp.

    b.  The need for dental restorative procedures with significant laboratory costs involved, such as cast partial dentures.

    c.  Severe non-functional bite and malocclusion which involves psychosocial factors in the offender's appearance and his or her potential for adjustment (not involving orthodontic treatment).

5.  **Category V**

    a.  Radiographical absence of carious lesions.

    b.  Lack of clinically visible gingival irritation.

6.  **Category VI**

    No symptoms or apparent need for dental treatment related to the type of assessment or inspection performed.

# CMS

**Illinois Department of**
**CENTRAL MANAGEMENT SERVICES**

**POSITION DESCRIPTION**

| 1. POSITION TITLE | WORKING TITLE (IF ANY) | Bilingual Code | Position Title Option Code | 2. POSITION NUMBER |
|---|---|---|---|---|
| Existing Position | | | | 11752-29-82-260-10-01 |
| New/Revised Position<br>Dentist 2 | | | | 11752-29-82-210-10-01 |

| 3. AGENCY | 4. BUREAU/ DIVISION | 5. EXMT CODE | 6. WORK COUNTY | 7. AM AUTH. | 8. AUDIT | 9. OFFICE USE |
|---|---|---|---|---|---|---|
| Existing Position | | | | | | |
| New/Revised Position<br>Corrections | Stateville Correctional Center | 0 | 099 | N | R | |

| 10. SECTION | 11. UNIT | 12. TRANSACTION CODE | 13. EFFECTIVE DATE |
|---|---|---|---|
| Existing Position | | | 09/16/2009 |
| New/Revised Position<br>Programs | Dental | | |

| 14. WORK LOCATION | 15. BARGAINING/TERM CODE | Rutan Exempt | |
|---|---|---|---|
| Existing Position | | | ☐ MA021 ESTABLISH<br>☐ MC022 EXEMPT CODE CHANGE<br>X MC024 POSITION NUMBER CHANGE<br>X MC026 CLARIFY<br>☐ MC027 ADDITIONAL IDENTICAL CHANGE<br>☐ MC028 WORK COUNTY CHANGE<br>☐ MD021 ABOLISH<br>☐ MC149 DOWNWARD REALLOCATION<br>☐ MC150 LATERAL REALLOCATION<br>☐ MC158 UPWARD REALLOCATION |
| New/Revised Position<br>Will County | RC-063 | N | |

| % OF TIME | 16. COMPLETE, CURRENT AND ACCURATE STATEMENT OF POSITION ESSENTIAL FUNCTIONS |
|---|---|
| | Under administrative direction of the Health Care Unit Admin (Public Service Admin), plans, develops and coordinates a dental care and treatment program including diagnostic, operative, prosthetics, surgical and oral pathologic dentistry at the Stateville Correctional Center; serves as a designated leadworker. |
| 25% | 1. Serves as designated leadworker; assigns and reviews work; reviews time off slips prior to submission to management for review and approval; provides input into performance evaluations. |
| 20% | 2. Performs clinical and x-ray examinations with preparation for laboratory tests; cleans teeth; inserts silver, plastic and temporary fillings; performs endodontic treatment, surgical treatment, prosthetic treatment and other standard dental treatments. |
| 15% | 3. Establishes an in-service dental laboratory routine; trains personnel in institutional dental methods and procedures; plans a program and instructs on oral hygiene and methods of preventing the spread of oral diseases; treats pathologic conditions of the mouth. |
| 15% | 4. Plans a program of dental care and directs adoption of new types of dental treatment; develops, reviews and interprets departmental rules and policies for the Oral Hygiene program; directs Dental Assistant in the routine handling of patients, instruments and supplies; maintains the security and sanitary condition of area and equipment. |
| 10% | 5. Consults with superiors and medical and nursing staff on problems relating to the Dental Program; approves in-services requisitions for dental equipment, supplies and drugs. |
| 05% | 6. Cares for the more difficult cases which require more experience and/or skill i.e. surgical procedures involving impacted teeth, etc. |
| 05% | 7. Reviews and evaluates the entire dental program and makes adjustments to improve treatment; reviews current policies and procedures; drafts recommendations for improvement. |
| 05% | 8. Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above. |

| DIRECTOR OF CMS SIGNATURE | IMMEDIATE SUPERVISOR SIGNATURE | AGENCY HEAD SIGNATURE | DATE |
|---|---|---|---|
| | | | |

CMS-104 (Rev. 10/94) IL 401-0794

| 16. (CONTINUED) | |
|---|---|
| % OF TIME | |
| | |

**17. POSITION TITLE AND NUMBER OF IMMEDIATE SUPERVISOR** (Responsible for assigning and reviewing work, preparing, conducting and signing performance evaluations; effectively recommending and imposing disciplinary action and adjusting grievances for the incumbent of this position.)

| Public Service Admin.  37015-29-82-210-00-01 | WORKING TITLE (IF ANY) |
|---|---|
| | Health Care Unit Administrator |

**18. CHECK THE APPROPRIATE BOX IF THIS POSITION IS A:**

☐ SUPERVISOR     OR     X LEAD WORKER

NOTE:  Supervisory or lead worker responsibilities **must** be described in a detailed duty statement(s) with a time percentage(s) allotted.

If a box was checked above, list position title, position number, and number of subordinate incumbents or authorized funded headcount:

| Position Title | Position Number | No. of Incumbent or Funded Vacancies |
|---|---|---|
| Dental Assistant | 11650-29-82-210-10-01 | 2 |
| Dentist 1 | 11751-29-82-210-10-01 | 3 |
| | | |
| | | |
| | | |
| | | |

**19. SPECIALIZED KNOWLEDGES, SKILLS, ABILITIES, LICENSURE OR CERTIFICATION NECESSARY FOR THE SUCCESSFUL PERFORMANCE OF THE WORK OF THIS POSITION. NOTE: SINCE THERE ARE NOW SEVERAL OPTIONS OF SKILLS AND ABILITIES AND LICENSURE OR CERTIFICATION IDENTIFIED ON STANDARDS, THE PHRASE "SAME AS SPECIFICATION" CAN NO LONGER BE USED.**

Requires graduation from an accredited college of dentistry; requires a valid license to practice dentistry and oral surgery in Illinois; requires two years experience in the practice of dentistry; requires comprehensive knowledge of the principles and practices of preventative and corrective dentistry and oral surgery; requires the ability to plan and direct execution of dental care programs at a State facility; requires ability to establish and maintain satisfactory working relationships between personnel and institutional staffs and inmates of patients; requires ability to prepare operating reports.

STATE OF ILLINOIS )
) SS
COUNTY OF __Will__ )

## AFFIDAVIT

I, __LESTER DOBBEY__ being first duly sworn under oath depose and state
that the foregoing is true and correct and made upon my personal knowledge and I
am competent to testify thereto.

That Stateville Correctional Center has a
program called the Offender Tracking System
("OTS"). Which is used to maintain the location
and housing of Inmates. Stateville's Staff,
including, But not limited to, Stateville's Dental
Personnel has access to the OTS when needed
to locate an Inmate.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of
perjury, that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of my
knowledge.

DATE: June 15, 2013

/s/
NAME: Lester Dobbey
IDOC#: R-16237
Stateville Correctional Center
P.O. BOX 112
Joliet , IL 60434

IN THE
United States District Court
Northern District of Illinois

LESTER DOBBEY,
Plaintiff/Petitioner

Vs.

Jacqueline Mitchell-Lawshea, et al
Defendant/Respondent

)
)
)
)
)
)
)
)

No. 12C 1739

## PROOF/CERTIFICATE OF SERVICE

TO: U.S. District Court
Attn: Prison Correspondence
219 South Dearborn
Chicago, IL 60601

TO: Illinois Attorney General
Atty: Kevin Lovellette
100 W. Randolph St., 13th Floor
Chicago, IL 60601

PLEASE TAKE NOTICE that on _____ June ___, 20 13, I placed the
attached or enclosed documents in the institutional mail at Stateville
Correctional Center, properly addressed to the parties listed above for mailing through
the United States Postal Service. (4) Plaintiff's Local Rule 56.1 Statement of Uncontested
Facts Against Defendants Lawshea and Dangerfield

DATED: June , 2013

/s/ _____
NAME: LESTER DOBBEY
I.D.O.C.#: R-16237
Stateville Correctional Center
P.O. Box: 112
Joliet , IL 60434

Subscribed and sworn to before me this 18 day of June, 20 13.

_____
Notary Public

OFFICIAL SEAL
TYNEER N. BUTLER-WINTERS
Notary Public, State of Illinois
My Commission Expires Jan 20, 2015