UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESTER DOBBEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | )  No. 12 C 1739 |
| v. | ) Hon. Robert M. Dow, Jr. |
| | ) Judge Presiding |
| JACQUELINE MITCHELL-LAWSHEA, et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S LOCAL RULE 56.1 STATEMENT**

NOW COME Defendants, JACQUELINE MITCHELL-LAWSHEA and MICHAEL DANGERFIELD, by and through their attorney LISA MADIGAN, Attorney General of the State of Illinois, and for their Response to Plaintiff's Statement of Material Facts state as follows:

**CLAIM**

1. In March 2012, Plaintiff brought this civil action against Defendants Jacqueline Mitchell-Lawshea and Michael Dangerfield, under the Eight and Fourteenth Amendments to the United States Constitution, alleging deliberate indifference, cruel and unusual punishment regarding his serious medical condition and needs, while defendants were purporting to act under the color of law. (Pl. Compl. At ¶ 1, 62 and 64).

**ANSWER:** **Admit**.

2. Defendant Lawshea, was one of the dentistry doctors and dentist, who worked at Stateville Correctional Center, at all times relevant to Plaintiff's Complaint. (Pl. Compl. At ¶5 and 11).

**ANSWER:** **Admit**.

3. Defendant Dangerfield was one of the Correctional Offices, who worked at Stateville Correctional Center, at all times relevant to Plaintiff's Complaint. (Pl. Compl. At ¶ 7 and 13).

**ANSWER:** **Admit**.

4. On January 7, 2011, Plaintiff stopped ("Medical Technician") CMT-David Barnes, at approximately 7:30 am, while he Bravo house and explained to him that Plaintiff was experiencing an "excessive tooth ache". (Pl. Compl. At ¶ 15; Pl. Compl. Exs. # DB:00311, DB:00312, Ex. #3; See, Attached Exhibit – A).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00311, DB:00312" refer to.**

5. On January 7, 2011, Plaintiff explained to CMT-David Barnes, that he had an injection surrounding his tooth, which had his gums inflamed, and where the ache extended to Plaintiff's ear and head. Which Plaintiff also physically showed CMT-Barnes that his tooth was loose and his gums leaking pus in the surrounding area. (Pl. Compl. At ¶ 16; Pl. Compl. Exs. # DB:00311, #DB: 00312, Ex. #3; See, attached Exhibit-A).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00311, DB:00312" refer to.**

6. On January 7, 2011, CMT-Barnes asked Plaintiff for his information, in which, Plaintiff wrote an, "Emergency Request to Health Care Unit-Dentistry" stating, "I ("Plaintiff") have an infection in one tooth, where also I am in severe pain, headache, earache, and toothache. It's becoming unbearable to deal with, and I need some emergency attention, some antibiotics,

and pain medication. (Pl. Compl. At ¶17; Pl. Compl. Exs. #DOB:00311; DB: 00312, Ex. #3, See, Attached Exhibit-A).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint, Defendants are unable to determine what "Exs. # DB:00311, DB:00312" refer to; and Plaintiff's Exhibit A is inadmissible hearsay and a conclusion without foundation.** *Haywood v. Lucent Tech. Inc.*, **323 F.3d 524, 533 (7th Cir. 2003).**

7. On January 7, 2011, CMT-Barnes took Plaintiff's "Emergency Request" and stated that he would turn it in to Dental as "urgent" and ask the dentistry to have Plaintiff brought to the dentist that same day. (Pl. Compl. At ¶18; Pl. Compl. Exs. #DB: 00311, #DB: 00312, Ex. #3; See, Attached Exhibit-A).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint, Defendants are unable to determine what "Exs. # DB:00311, DB:00312" refer to; and Plaintiff's Exhibit A is inadmissible hearsay and a conclusion without foundation.** *Haywood v. Lucent Tech. Inc.*, **323 F.3d 524, 533 (7th Cir. 2003).**

8. On January 7, 2011, CMT-Barnes, noted and wrote on Plaintiff's "Emergency Request to Dental", "R/O Urgent Abscess Dental Loose Tooth very painful." (Pl. Compl. Ex. #DB: 00311).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00311" refer to.**

9. On January 7, 2011 CMT-Barnes, wrote a "Health Care Unit Referral" for Plaintiff asking, "Please schedule this inmate for the Dental Clinic," and that the, "Reason for appointment R/O Abscess." (Pl. Compl. Ex. #DB:00312).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00312" refer to.**

10. On January 7, 2011, Plaintiff was not seen by anyone from the Dental Clinic. (See, Pl. Compl. At ¶ 21; See, Attached Exhibit –A).

**ANSWER:** Admit.

11. On January 11, 2011, Plaintiff stopped CMT-Barnes, again, as he proceeded through Bravo House, and asked him did he turn in Plaintiff's information to the dentist, because Plaintiff had not been called or seen by anyone, as Plaintiff further explained to CMT-Barnes that he was still in severe pain. (Pl. Compl. At ¶ 22: Pl. Compl. Ex. #3; See, Attached Exhibit-A).

**ANSWER: Deny: Plaintiff sites to an unverified Complaint and Plaintiff's Exhibit A is inadmissible hearsay and a conclusion without foundation.** *Haywood v. Lucent Tech. Inc.*, **323 F.3d 524, 533 (7th Cir. 2003).**

12. On January 11, 2011, CMT-Barnes told Plaintiff that he turned in Plaintiff's information to the Dentist and informed them that it was "urgent" because of the abscess. CMT-Barnes, further told Plaintiff that when he finished his rounds he was going to see if the Dentistry would call Plaintiff over on this same day. (Pl. Compl. At ¶ 23; Pl. Compl. Ex. #3; also see, Attached Exhibit-A).

**ANSWER: Deny: Plaintiff sites to an unverified Complaint and Plaintiff's Exhibit A is inadmissible hearsay and a conclusion without foundation.** *Haywood v. Lucent Tech. Inc.*, **323 F.3d 524, 533 (7th Cir. 2003).**

13. On January 11, 2011, Plaintiff was not seen by anyone from the Dental Clinic. (Pl. Compl. At ¶ 24; Pl. Compl. Ex. #3; See, Attached Exhibit-A).

**ANSWER:** Admit.

14. On January 12, 2011, Defendant Lawshea, wrote and noted in Plaintiff's Dental Chart/Records, "Pt. ("patient") reports Abscess". This was Defendant Lawshea's first time learning that Plaintiff was complaining of his tooth issues. And Defendant Lawshea scheduled Plaintiff to be seen on January 14, 2011. (Pl. Compl. At ¶ 25; Pl. Compl. Ex. #DB: 00308; also See, Attached Exhibit-B, at ¶ 9).

**ANSWER:** **Admit.**

15. On January 14, 201, Defendant Lawshea, noted and wrote in Plaintiff's Dental Chart/Records, "Reschedule Appt ("Appointment"), staff shortage to R&C, bore Abscess, 1/25/2011." (Pl. Compl. Ex. # DB: 00308).

**ANSWER:** **Admit.**

16. On January 14, 2011, Plaintiff went to the Health Care Unit for his scheduled appointment, in which, Plaintiff was greeted at the Health Care Unit door by Defendant Dangerfield, and placed in the Health Care Unit's Bullpen. (Pl. Compl. At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit B, at ¶ 14; Also see, Attached Exhibit-D).

**ANSWER:** **Admit.**

17. On January 14, 2011, Plaintiff was told by Defendant Dangerfield that his appointment was cancelled. Plaintiff then asked Defendant Dangerfield "why" the appointment was cancelled. Defendant Dangerfield stated that he didn't know why. (Pl. Compl. At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit B, at ¶ 17; Also see, Attached Exhibit-D).

**ANSWER:** **Admit.**

18. On January 14, 2011, Plaintiff then asked Defendant Dangerfield, could he at least go get some medical personnel because Plaintiff was in severe pain and showed Defendant

Dangerfield his infected tooth, because Plaintiff wanted to get some pain medication. (Pl. Compl. At ¶ 26; Pl. Compl. Ex. #3; See, Attached Exhibit-D).

**ANSWER:** **Admit.**

19. On January 14, 2011, Defendant Dangerfield, told Plaintiff that he couldn't be seen by medical personnel if he didn't have a call pass, and that his ride back to the cell-house was waiting. In which, Plaintiff was sent out of the health care unit by Defendant Dangerfield, and escorted to Bravo House by another correctional officer. (Pl. Compl. At ¶ 26; Pl. Compl Ex. #3; See, Attached Exhibit-D).

**ANSWER:** **Admit.**

20. Later, on January 14, 2011, Plaintiff wrote and filed as "Emergency Grievance" to Warden Marcus Hardy, explaining about his toothache, headache, earache, tooth infection and pains. Requesting, quote, "to be seen by the dentist A.S.A.P.". (Pl. Compl. At ¶ 27; Pl. Compl. Ex. #3).

**ANSWER:** **Admit.**

21. On January 19, 2011 Plaintiff began experiencing a fever and upset stomach, which pained him to the point that he began to vomit bile, while experiencing severe tremors in his body, having cold and hot shakes. (Pl. Compl. At ¶ 28; See, Attached Exhibits-E).

**ANSWER:** **Admit.**

22. On January 20, 2011, Plaintiff still was enduring a fever, upset stomach, vomiting bile, severe tremors, cold and hot shakes, as well as, toothaches, earache, headache, and abdominal pains. In which, Plaintiff stopped correctional officers Joshua Clements and Jasmine Cage, as Plaintiff was vomiting bile, and told them that he needed medical help. Minutes later,

c/o Clements came back to Plaintiff's cell Bravo #405 and to him told him to put on his uniform so that Plaintiff could go to the Health Care Unit. (Pl. Compl. At ¶ 29; See, Attached Exhibit-F).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Plaintiff's Exhibit F is inadmissible hearsay and a conclusion without foundation.** *Haywood v. Lucent Tech. Inc.*, **323 F.3d 524, 533 (7th Cir. 2003).**

23. On January 20, 2011, Plaintiff was escorted to the Health Care Unit's Emergency Room, and was evaluated by Correctional Medical Technician ("CMT") Wendy Olson-Foxon, who noted and wrote in Plaintiff's Medical Chart/Records, Plaintiff's complaint of stomach pains and vomiting. And noted his temperature at 101.9º and how Plaintiff felt something pop, and that he had hot and cold shivers. (Pl. Compl. At ¶ 30; See, Attached Exhibit0G/1).

**ANSWER:** **Admit. As Plaintiff has failed to provide Exhibits G/1to the Defendants and to the Court, Defendants are unable to affirm or deny information contained in this exhibit.**

24. On January 20, 2011, Plaintiff was next evaluated by Medical Doctor Dr. Ron Schaefer who noted that Plaintiff had been in his condition for two (2) days. Dr. Schaefer noted it was "unknown" what caused Plaintiff's fever, and admitted Plaintiff into the Health Care Units Infirmary for 23 hours observation. Plaintiff then was placed on an I.V. liquid treatment. (Pl. Compl. At ¶ 31; See, Attached Exhibit-G/1 and G/2).

**ANSWER:** **Admit. As Plaintiff has failed to provide Exhibits G/1 and G/2 to the Defendants and to the Court, Defendants are unable to affirm or deny information contained in these exhibits.**

25. Plaintiff remained in the Health Care Unit's Infirmary and was discharged on January 24, 2011. (Pl. Compl. At ¶ 31-37; See, Attached Exhibits –G/1-G/8).

**ANSWER:** **Defendants admit that Plaintiff remained in the Health Care Unit's Infirmary and was discharged on January 24, 2011. As Plaintiff has failed to provide Exhibits G/1-G/8 to the Defendants and to the Court, Defendants are unable to affirm or deny information contained in these exhibits.**

26. On January 28, 2011, Defendant Lawshea, evaluated Plaintiff and noted in Plaintiff's Dental Chart/Records, "swelling and abscess" surrounding tooth #31, then prescribed Plaintiff 30 tablets of 500 mg Penicillin. (Pl. Compl. At ¶ 39; Pl. Compl. Ex. #DB:00314; See also, Attached Exhibit B, At ¶ 10; also see, Attached Exhibit-C, at ¶ 20).

**ANSWER:** Admit.

27. On February 3, 2011, Defendant Lawshea, finally extracted Plaintiff's infected tooth No. #31. (Pl. Compl. At ¶ 40; Pl. Compl. Ex. # DB: 00314; See, Attached Exhibit-B, At ¶ 10).

**ANSWER:** Admit.

28. On January 7, 2011, Defendant Lawshea was working in the Dental Office at Stateville Correctional Center. (See, Attached Exhibits0B, At ¶ 4 and Ex. H/1).

**ANSWER:** Admit.

29. Defendants Lawshea and Dangerfield, do not believe that inmate request slips that are submitted to Stateville's Dental Clinic are kept in the ordinary course of business, and were unable to locate any request slips from Plaintiff other than Plaintiff's request slip he attached to his complaint in this matter. (Pl. Compl. Ex. # DB: 00311; and see also, Attached Exhibit-I, at ¶ 4).

**ANSWER:** Admit.

30. When inmates have a medical complaint, it is his responsibility to contact the corrections medical technician to submit a medical request to the health care unit. The CMT evaluates the inmate's medical needs. Treatment for minor ailments may be provided at that

8

time; otherwise, the offender may be referred to physician sick call "or" the Health Car Unit for treatment. According to the Stateville Inmate Handbook and Administrative directive 04.03.102.,. (See, attached Exhibit-J/1, J/2, and J/3).

**ANSWER:** **Admit.**

31. Stateville Correctional Center Dental Clinic is open 8:00 am- 4:00 pm. Monday through Friday. (See, Attached Exhibits-C, at ¶13 and Ex. J/4, at ¶ 6 (a)).

**ANSWER:** **Admit.**

32. To request emergency Dental Care, the inmate should contact the CMT in his living unit. The inmate will be seen as soon as possible within 24 hours or the next working day. (See, attached Exhibits- J/4, at ¶ 6(e)).

**ANSWER:** **Defendants admit to the averment in paragraph 32 subject to its complete site from Exhibit J/4, ¶ 6(e): "To request emergency Dental Care, the inmate should contact the CMT in his living unit. The inmate will be seen as soon as possible within 24 hours or the next working day, depending on the nature of the emergency."**

33. One of Defendant Lawshea's position essential functions is to serve as designated lead worker. (See, attached exhibit-K/1).

**ANSWER:** **Deny, exhibit-K/1 only indicates that Defendant Lawshea's position is that of a lead worker and does not state it is one of the essential functions.**

34. Defendant Lawshea, use and follow as guide the "American Public Health Association Based Categorization of Dental Patients ("APHA"), to the extent it is applicable in any given situation. " (See, attached exhibit-C, at ¶ 8 and Ex. J/5).

**ANSWER:** **Defendants admit to the averment in paragraph 34 subject to its complete site from Exhibit C, at ¶ 8: Defendants Lawshea follows the [American Public Health Association Based Categorization of Dental Patients ("APHA")] guide, to the extent it is applicable in any given situation, and to the extent that it is purely a guide.**

9

35. In the ("APHA") guide there are nine (9) factors categorized under emergency treatment: (a). Bleeding and Pain; (b). Acute Periapical Abscess; (c). Acute periodontitis; (d). Vincent infection; (e) Acute Gingivitis; (f). Acute stomatitis; (g) fracture of teeth; (h) fracture of jaw or jaws; and (i) gaping wounds of lips and cheeks. (See, attached Exhibits-C, at ¶ 9 and ex. J/5, at ¶ 1).

**ANSWER:** **Admit.**

36. Neither Defendant Lawshea or Dangerfield, remembers "classifying" Plaintiff's Dental Request slip under any category pursuant to the ("APHA") guide on January 12, 2011, and there are no documents to refresh their memories. (See, attached Exhibit-C, at ¶ 10, 11 and 12.)

**ANSWER:** **Admit.**

37. Plaintiff's January 7, 2011, request slip to dental stated and detailed, in significant part, "Emergency, tooth infection, severe pain, headache, earache, toothaches, urgent abscess, loose tooth, very painful, need some emergency attention, some antibiotics and pain medication." (Pl. Compl. At ¶ 15-16; Pl. Compl. Ex. #DB: 00311; See, attached exhibit-A) (Compare, attached Ex. J/5).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00311" refers to.**

38. Plaintiff has been diagnosed with periodontal gum disease. (Pl. Compl. Ex. # DB: 00314).

**ANSWER:** **Deny: Plaintiff sites to an unverified Complaint and Defendants are unable to determine what "Exs. # DB:00314" refers to.**

39. Although Plaintiff was scheduled to be seen by Defendant Lawshea on January 14, 2011, she did not see the Plaintiff on this day, rather, the appointment was rescheduled, and

10

Defendant Lawshea does not remember why the appointment was rescheduled. (See, attached Exhibit-B, at ¶ 8).

**ANSWER:** **Admit.**

40. On January 14, 2011, Defendant Lawshea, was working in the Stateville's Dental Office, as well as, Sangita Gang, Christine Luce and Loretta Morse. (See, attached Exhibit-H/2).

**ANSWER:** **Admit.**

41. On January 18, 2011, Defendant Lawshea was working in the Stateville's Dental Office, as well as, Christine Luce, Jeffrey Saffold and Loretta Morse. (See, Attached Exhibit-H/3).

**ANSWER:** **Admit.**

42. ON January 19, 2011, Sangita Garg and Loretta Morse, was working in the Stateville's Dental Office. (See, Attached Exhibit-H/3).

**ANSWER:** **Admit.**

43. On January 20, 2011, Defendant Lawshea was working in the Stateville's Dental Office, as well as, Christine Luce and Jeffrey Saffold. (See, Attached Exhibit –H/3).

**ANSWER:** **Admit.**

44. On January 21, 2011, Defendant Lawshea was working in the Stateville's Dental Office, as well as, Sangita Garg, Christine Luce and Loretta Morse. (See, Attached Exhibit-H/4).

**ANSWER:** **Admit.**

45. On January 24, 2011 Defendant Lawshea was working in the Stateville's Dental Office as well as, Christine Luce and Mary Lake. (See, Attached Exhibit-H/4).

**ANSWER:** Admit.

46. On January 25, 2011, Defendant Lawshea was working in the Stateville's Dental Office, as well as, Christine Luce, Loretta Morse, Jeffrey Saffold and Kenneth Brooks. (See, Attached Exhibit –H/4).

**ANSWER:** Admit.

47. On January 26, 2011, Sangita Garg, Loretta Morse and Mary Lake was working in Stateville's Dental Office. (See, Attached Exhibit-H/4).

**ANSWER:** Admit.

48. On January 27, 2011, Christine Luce, Loretta Morse, Jeffrey Saffold, Kenneth Brooks and Mary Lake, was working in Stateville's Dental Office. (See, Attached Exhibit-H/4).

**ANSWER:** Admit.

49. On January 28, Defendant Lawshea, was working in Stateville's Dental office as well as, Sangita Garg, Loretta Morse, Kenneth Brooks and Mary Lake. (See, Attached Exhibit-H/4).

**ANSWER:** Admit.

50. In the usual course of business it is normal for one staff member to see and treat one inmate for an abscess and pains, but more staff members may be required to treat the inmate depending on the specific issues and the situation. (See, attached Exhibit-C, at ¶ 18).

**ANSWER:** Admit.

51. Stateville Correctional Center has a program called the Offender Tracking System ("OTS") which is used to maintain the location and housing of inmates. Stateville's Staff, including but not limited to, Stateville's Dental Personnel has access to the OTS when needed to locate and inmate. (See, Attached Exhibit-L).

**ANSWER:** Deny, Exhibit L is inadmissible hearsay and a conclusion without foundation. *Haywood v. Lucent Tech. Inc.*, 323 F.3d 524, 533 (7th Cir. 2003).

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,

/s/ Agnes Ptasznik
AGNES PTASZNIK
Assistant Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814 - 4217

**PROOF OF SERVICE MAIL**

I, Agnes Ptasznik, certify that on August 2, 2013, I served this matter on the above-named parties by U.S. mail and/or electronic mail with proper postage prepaid from 100 West Randolph Street, Chicago, Illinois 60601 prior to 5:00 p.m.

/s/Agnes Ptasznik