# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESTER DOBBEY (R-16237), ) | |
| ) | |
| Plaintiff, ) | Case No. 12 C 1739 |
| ) | |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| JACQUELINE ) | |
| MITCHELL-LAWSHEA, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lester Dobbey, an Illinois inmate confined at Stateville Correctional Center, filed this civil rights action pursuant to 42 U.S.C. § 1983 action against Stateville Correctional Officer Michael Dangerfield and Stateville Dentist Jacqueline Mitchell-Lawshea ("Defendants").[1] Plaintiff alleges that the Defendants acted with deliberate indifference to Plaintiff's abscessed tooth in January of 2011 when Mitchell-Lawshea knew about, yet did not treat, the tooth for two weeks, and when Dangerfield refused Plaintiff's request to remain in the Health Care Unit bullpen to obtain medical attention from another person after Mitchell-Lawshea rescheduled an appointment. Currently before the Court are Defendants' motion for summary judgment [38] and Plaintiff's cross motion for summary judgment [43]. For the reasons set forth below, the Court grants Defendants' motion [38] and denies Plaintiff's motion [43].

**I.     Legal Standard on Cross Motions for Summary Judgment**

---

[1] Plaintiff also brought suit against "John or Jane Doe;" however, the Doe Defendants were never served or identified by Plaintiff.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

Both Plaintiff and Defendants filed the following: (1) motions for summary judgment; (2) N.D. Ill. Local Rule 56.1 Statements of Material Facts ("SOF") supporting their motions; and responses to each other's Rule 56.1 Statements. Consistent with Local Rule 56.2, Defendants provided Plaintiff with

notice of his need to respond to their Rule 56.1 SOF, along with instructions as to how to respond. The facts below are taken from the parties' factual assertions in their Rule 56.1(a)(3) Statements. The Court may deem admitted any Rule 56.1 factual statement supported by the record, to which the opposing party does not provide a proper response. See N.D. Ill. L.R. 56.1(b)(3)(C); *Keeton v. Morningstar*, Inc., 667 F.3d 877, 880-81, 884 (7th Cir. 2012). As noted below, the parties agree to most of the pertinent facts.

## II. FACTS

Plaintiff is an Illinois inmate at the Stateville Correctional Center, which is where he has been confined at all times relevant to this case. (Defs. SOF, Doc. 40 ¶ 1, Pl. Resp., Doc. 51 ¶ 1.) Dr. Jacqueline Mitchell-Lawshea has been a dentist at Stateville from 1992 to the present. (Defs. SOF ¶ 2; Pl. Resp. ¶ 2.) Michael Dangerfield has been a correctional officer at Stateville from 1997 to the present. (Defs. SOF ¶ 3; Pl. Resp. ¶ 3.) On January 7, 2011, Plaintiff began experiencing a tooth ache. He informed a medical technician and he filled out an Emergency Request for Medical Attention. (Defs. SOF ¶ 6; Pl. Resp. ¶ 6.) Mitchell-Lawshea was working on January 7, 2011. (Defs SOF ¶ 7; Pl. Resp. ¶ 7.) She does not remember seeing Plaintiff's emergency medical request slip and does not know who in the Health Care Unit received such slips. (*Id.*) Plaintiff was not seen by anyone from the dental clinic at that time. (Pl. SOF, Doc. 44 ¶ 10; Defs. Resp., Doc. 46 ¶ 10.) On January 11, 2011, having received no dental care, Plaintiff complained again about his tooth. (Pl. SOF ¶ 11; see also Pl. Depo. at 8.) Plaintiff was not seen by anyone in the dental clinic on January 11, 2011. (Pl. SOF ¶ 13.)

The parties agree that Dr. Mitchell-Lawshea first learned of Plaintiff's complaints of a tooth ache on January 12, 2011. (Pl. SOF ¶14; Defs. Resp. ¶ 14.) On that day, she wrote in Plaintiff's chart "Pt. (patient) reports Abscess," and she set an appointment for January 14, 2011. (*Id.*) On January 14,

2011, Mitchell-Lawshea wrote on Plaintiff's chart: "Reschedule Appt., staff shortage to R&C, bore Abscess, 1/25/11." (Pl. SOF ¶ 15; Defs. Resp. ¶ 15.) Mitchell-Lawshea did not see Plaintiff on January 14, 2011, and she does not remember why his appointment was rescheduled. (Pl. SOF ¶ 39; Defs. Resp. ¶ 39.)

On January 14, 2011, Plaintiff went the Health Care Unit ("HCU") (it is not clear from the record whether Mitchell-Lawshea rescheduled Plaintiff's appointment before or after he went the HCU). Upon arriving at the HCU, Plaintiff was met by Officer Dangerfield and placed in the HCU bullpen, where inmates wait for their appointments. (Pl. SOF ¶ 16; Defs. Resp. ¶16.) Prior to January 14, 2011, Dangerfield knew nothing about any issue with Plaintiff's tooth. (Def. SOF ¶ 11; Pl. Resp. ¶ 11).

Eventually, while Plaintiff was waiting in the HCU, Dangerfield told Plaintiff that his appointment had been cancelled. (Pl. SOF ¶ 17; Defs. Resp. ¶ 17.) Plaintiff showed Dangerfield his infected tooth and asked Dangerfield if he could get any medical person passing through the bullpen to examine him so that he could receive pain medication for his tooth. (Pl. SOF ¶ 18; Defs. SOF ¶ 18.) Dangerfield informed Plaintiff that he could not be seen by medical personnel unless he had a call pass and, further, that Plaintiff's ride back to his cell house was waiting. (PL SOF ¶ 19; Defs. Resp. ¶ 19.) Plaintiff was escorted back to his unit by another officer. (*Id.*) Later that day, Plaintiff submitted an emergency grievance to Warden Marcus Hardy, in which Plaintiff complained of a toothache, tooth infection, headache, earache, and pain. (Pl. SOF ¶ 20; Defs. SOF ¶ 20.) He requested "to be seen by a dentist ASAP." (*Id.*)

On January 19, 2011, Plaintiff began experiencing a fever, stomach pains, tremors, and hot and cold flashes. He also began vomiting. (PL. SOF ¶ 21; Defs. Resp. ¶ 21.) On January 20, 2011,

Plaintiff was escorted to HCU's emergency room, where a medical technician first evaluated Plaintiff and noted on his medical chart that he was having stomach pain, vomiting, and experiencing hot and cold flashes; the medical technician further noted that Plaintiff had a fever of 101.9 and that Plaintiff had reported hearing something pop. (Pl. SOF ¶ 23; Defs. SOF ¶ 23.) Plaintiff was next evaluated by a doctor, who noted on Plaintiff's chart that he had been experiencing his symptoms for two days. (Pl. SOF ¶ 24; Defs. Resp. ¶ 24.) The doctor further noted that the cause of these symptoms was unknown and admitted Plaintiff to the HCU Infirmary for 23 hours for observation. (*Id.*) Plaintiff was placed on an IV fluid. (*Id.*) Plaintiff remained in the HCU Infirmary until January 24, 2011.[2] (Pl. SOF ¶ 25; Defs. Resp. ¶ 25.)

On January 28, 2011, Dr. Mitchell-Lawshea examined Plaintiff. (Pl. SOF ¶ 26; Defs. Resp. ¶ 26.) Plaintiff had not spoken to Mitchell-Lawshea about his tooth prior to January 28, 2011. (Defs. SOF¶ 17; Pl. Resp. ¶17.) At that time, she noted on Plaintiff's chart that there was swelling and an abscess around tooth #31, and she prescribed 30 tablets of 500mg penicillin. (Pl. SOF ¶ 26; Defs. SOF ¶ 26.) On February 3, 2011, she extracted Plaintiff's tooth. (Pl. SOF ¶ 27; Defs. SOF ¶ 18.) Plaintiff had no additional dental problems after his tooth was extracted. (Defs. SOF ¶ 19; Pl. Resp. ¶ 19.)

Neither Dangerfield nor Mitchell-Lawshea believe that request slips for dental care are kept in the ordinary course of business and, apart from the copy of a request slip attached to Plaintiff's complaint, neither Defendant is able to locate any of Plaintiff's request slips. (Pl. SOF ¶ 29; Defs.

---

[2] There is no evidence in the record that the symptoms that Plaintiff exhibited on January 19 through January 24 were related to Plaintiff's abscess. In fact, in his original complaint, Plaintiff sued Dr. Ghosh, Stateville's former medical director, for conduct arising out of Plaintiff's stay in the HCU emergency room. As the Court pointed out in its initial screen, based on Plaintiff's own allegations, his stay in the HCU was due to various infections that existed in his body at that time, including the "H. Pylori virus." The Court noted in its initial screen that Dr. Ghosh's conduct, which was unrelated to the denial of dental care, must be brought in a separate suit.

Resp. ¶ 29.) According to Stateville's Inmate Handbook and Administrative Directive 04.03.102, when an inmate has a medical complaint, it is his responsibility to contact a correctional medical technician ("CMT") to submit a request for medical care to the HCU. (Pl. SOF ¶ 30; Defs. Resp. ¶ 30.) Treatment for minor ailments may be provided by the CMT assigned to the inmate's unit; otherwise, the inmate is referred to physician sick call or the HCU for treatment. (*Id.*) Stateville's dental clinic is open Monday through Friday from 8 a.m. to 4 p.m. (Pl. SOF ¶ 31; Defs. Resp. ¶ 31.) To request emergency dental treatment, "the inmate should contact the CMT (correctional medical technician) in his living unit. The inmate will be seen as soon as possible within 24 hours or the next business day, depending on the nature of the emergency." (Pl. SOF ¶ 32; Defs. Resp. ¶ 32, quoting Exh. J, Stateville Offender Handbook G1).

Lawshea-Mitchell's position is that of a lead worker. (Pl. SOF ¶ 33; Defs. Resp. ¶ 33, citing Exh. K/1.) She follows the American Public Health Association Based Categorization of Dental Patients ("APHA") guide, to the extent it is applicable to a situation. (Pl. SOF ¶ 34; Defs. Resp. ¶ 34.) In the APHA, there are nine factors categorized under emergency treatment: (a) bleeding and pain; (b) acute periapical abscess; (c) acute periodontitis; (d) Vincent infection; (e) acute gingivitis; (f) acute stomatitis; (g) fracture of teeth; (h) fracture of jaw or jaws; and (i) gaping wounds of lips and cheeks. (Pl. SOF ¶ 35; Defs. Resp. ¶ 35, Exh. C, at ¶ 9 and Exh. J/5, Stateville Directive 04.03.102 at ¶ 1). Neither Dangerfield nor Mitchell-Lawshea remember classifying Plaintiff's request into one these categories on January 12, 2011; nor does any document indicate that anyone classified Plaintiff into these categories in connection with this incident. (Pl. SOF ¶ 36; Defs. Resp. ¶ 36.) Plaintiff contends that his January 7, 2011, request slip stated, in part, "emergency, tooth infection, severe pain, headache, earache, toothaches, urgent abscess, loose tooth, very painful, need some emergency attention, some

antibiotics and pain medication." (Pl. SOF ¶ 37, citing Compl. at 16, Bates stamped DB 0031.) Plaintiff also contends that he had been diagnosed with periodontal gum disease. (Pl. SOF ¶ 38.)

Mitchell-Lawshea, along with others, was working in Stateville's Dental Clinic on January 14, 18, 20, 21, 24, 25, and 28, 2011. (Pl. SOF ¶¶ 40-43, 49; Defs. Resp. ¶¶ 40-43, 49.) In the ordinary course of business, it is normal for only one staff member to see an inmate for an abscess and pain; however, more staff members may be needed depending on the circumstances. (Pl. SOF ¶ 50; Defs. Resp. ¶ 50.)

## III. Discussion

The Eighth Amendment's proscription against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir, 2011), quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Accordingly, deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Roe*, 631 F.3d at 857, quoting *Estelle*, 429 U.S. at 104.

A deliberate indifference claim consists of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate must be able to establish both (1) that he suffered an objectively serious medical condition, and (2) that defendants acted with deliberate indifference to that condition. As to the first prong, a condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe*, 631 F.3d at 857-58, quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The Defendants do not address whether Plaintiff's abscessed tooth constituted a serious medical condition, and courts have held that similar conditions are sufficiently serious. *Berry v. Peterman*, 604

F.3d 435, 440 (7th Cir. 2010) (tooth decay accompanied by serious pain necessitating immediate root canal was sufficiently serious); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) (extreme pain, deterioration of teeth, and inability to eat properly was a sufficiently serious condition); *Knox v. Furlong*, 2013 WL 1287390 at *4 (S.D. Ill. Mar. 27, 2013) (broken molar that became infected and caused severe pain was sufficiently serious). For purposes of this motion, the Court considers Plaintiff's abscessed tooth to be a "serious medical condition" and will focus, as the parties do, on whether Defendants acted with deliberate indifference to the condition.

To establish deliberate indifference, Plaintiff must prove that the Defendants acted with a "sufficiently culpable state of mind," *i.e.*, that they had actual knowledge of Plaintiff's condition but disregarded it. *Roe*, 631 F.3d at 857, quoting *Farmer*, 511 U.S. at 834; see also *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("They must know of the serious risk to the prisoner's health, *i.e.*, the serious medical need at issue, and they must also consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner.").

This case involves a medical and a non-medical Defendant. Although the subjective element described above applies to both, different factors are considered when determining whether a sufficiently culpable state of mind existed. The Court addresses each Defendant in turn.

  A.  **Defendant Dangerfield**

As a non-medical prison officer, Dangerfield could rely on the fact that Plaintiff was under the care of a dentist:

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005), quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); see also *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (same). A non-medical prison official cannot be charged with the "scienter requirement of deliberate indifference" where prison doctors were treating and caring for the prisoner unless the official had "reason to believe (or actual knowledge) that prison doctors . . . [we]re mistreating (or not treating) a prisoner." *Johnson*, 433 F.3d at 1011 at n.9.

Plaintiff claims that after Dangerfield learned that Plaintiff's appointment had been rescheduled, Dangerfield would not allow Plaintiff to wait in the bullpen in the hopes of seeing a medical person pass by. As explained by Plaintiff in his deposition:

> A. Well, the fact that Dangerfield, after saying my pass cancelled. I still asked him can I see a nurse or somebody to look at my mouth to try to get something for my mouth because it was paining and swollen.
>
> Q. And that was on January 14, 2011?
>
> A. That was on January 14, 2011.
>
> Q. And what did Dangerfield say?
>
> A. He was like, "No Partner, your ride is here."
>
> . . .
>
> Q. What does that mean?
>
> A. The officer is here to escort you back.
>
> Q. Okay.
>
> A. So those were his words. But, I kept telling him – I showed him. I said, "Man, look, You know. I'm trying to get up in there, you know, or let me just sit in the bullpen until a nurse walks past and I'll show them."
>
> But, if you don't have a pass, you can't get seen.

(Def. SOF, Doc. 40-4, Exh. D, Pl. Depo. at 19-20.) Plaintiff acknowledges that Dangerfield was neither a doctor nor a medical technician and that he did not have the authority to set up an appointment. *Id.* at 17, 21. However, Plaintiff contends that, even though Dangerfield could not set up an appointment, he could have stopped a medical person to look at Plaintiff's mouth. (*Id.* at 20-21.) According to Plaintiff: "My thing is if he had left me in the bullpen, I could have saw any nurse walking past because they have to come through the door of the healthcare unit." (*Id.* at 20.)

The scenario described by Plaintiff does not establish deliberate indifference by Dangerfield. As a non-medical prison officer, Dangerfield could rely on the fact that Plaintiff was under the care of a dentist. Even though Dangerfield knew that Plaintiff was not going to see Dr. Mitchell-Lawshea that day, it is undisputed that Mitchell-Lawshea, or someone from the prison dental department, was aware of Plaintiff's abscessed tooth and that an appointment had been scheduled and then rescheduled. As acknowledged by Plaintiff, Dangerfield had no authority to set up an appointment. Once it was clear that Plaintiff no longer had an appointment on the day that it was initially scheduled, Dangerfield's role was to make sure that Plaintiff returned to his unit. He was not obligated to allow Plaintiff to wait in the holding pen for on the off-chance that a medical person would pass by who could help him. Even though Dangerfield guarded the holding pen of the HCU, his role was still that of a guard. "Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on." *Greeno*, 414 F.3d at 656, quoting *Spruill*, 372 F.3d at 236; see also *Arnett*, 658 F.3d at 755. To find Dangerfield liable for not performing the role of a dentist, physician's assistant, or a medical technician, "would strain th[e] division of labor." *Greeno*, 414 F.3d at 656 (citation omitted).

Stateville has set procedures for requesting medical care, none of which involve the officer

guarding the HCU bullpen making an appointment or obtaining treatment for an inmate. Upon returning to his unit, Plaintiff could have contacted the medical technician for his unit or he could have submitted an emergency grievance, which Plaintiff did in this case. Given the evidence of record, it is clear that Plaintiff cannot establish that Dangerfield acted with deliberate indifference to Plaintiff's abscessed tooth. Thus, summary judgment is warranted for Officer Dangerfield.

### B. Defendant Mitchell-Lawshea

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir.2008) (internal quotation marks omitted). "'Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.'" *Roe*, 631 F.3d at 857, quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Although a successful plaintiff need not "show that he was literally ignored," and evidence that "a plaintiff received 'some' treatment does not resolve the issue conclusively," *Roe*, 631 F.3d at 857-58, quoting *Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005), "[a] medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe*, 631 F.3d at 857, quoting *Sain*, 512 F.3d at 894-95.

Mitchell-Lawshea became aware of Plaintiff's abscessed tooth on January 12, 2011; she scheduled an appointment for January 14, 2011; and, because of staff shortage, she rescheduled the January 14 appointment to January 25, 2011. Certainly, delaying treatment can amount to deliberate indifference, depending on the seriousness of the condition and the ease of providing treatment. See *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 640

(7th Cir. 2010). For delay to constitute deliberate indifference, a plaintiff must demonstrate that the "delay exacerbated the injury or unnecessarily prolonged [hi]s pain." *McGowan*, 612 F.3d at 640 (allegations of a delay of three months for dental care to fix a botched extraction stated a claim of deliberate indifference). Furthermore, the plaintiff must demonstrate that the defendant knew that the delay would have this effect. See *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk.").

In this case, the evidence that Mitchell-Lawshea knew that Plaintiff had an abscessed tooth but rescheduled the January 14, 2011, appointment to January 25, 2011, without providing any treatment on January 14th, by itself, does not establish deliberate indifference. Thus, Plaintiff relies upon two pieces of additional evidence to support his claim that Mitchell-Lawshea was aware of the seriousness of Plaintiff's abscess: (1) his January 7th grievance, and (2) the APHA guidelines for what constitutes an emergency. But neither of these documents creates a triable issue of fact as to Mitchell-Lawshea's knowledge of a risk of serious harm that she disregarded.

As to the January 7th grievance, in which Plaintiff complained of an excessive tooth ache, earache, and swelling around his tooth that oozed pus, the grievance was given to Medical Technician Barnes, not to Mitchell-Lawshea. Plaintiff admits that Lawshea-Mitchell did not learn about Plaintiff's condition until January 12, at which time she made an appointment for January 14, 2011. While CMT Barnes may have been aware of the seriousness of Plaintiff's condition, there is no evidence that Mitchell-Lawshea learned anything more than the fact that "[Plaintiff] reports abscess." (Pl. SOF ¶ 14.) Even if Barnes reported Plaintiff's complaints as "urgent" to the dental department, as Plaintiff contends, the parties agree that Mitchell-Lawshea knew only that Plaintiff reported an abscess. Similarly, with respect to the emergency grievance submitted to the warden on January 14 after Plaintiff

returned from the HCU, there is no indication that this grievance, or the information in it, were communicated to Mitchell-Lawshea.

Plaintiff's abscess may have been a sufficiently serious medical condition to satisfy the first prong of the deliberate-indifference standard, but there is no indication that the condition was so serious, or that Mitchell-Lawshea was aware that the condition was so serious, that a failure to treat it on January 14 meant that she deliberately disregarded Plaintiff's condition. See *Gayton*, 693 F.3d at 620 ("[t]he official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. . . . Evidence that the official acted negligently is insufficient to prove deliberate indifference."). There simply is insufficient evidence for a jury to conclude that Mitchell-Lawshea knew that Plaintiff needed immediate treatment and declined to give it to him. At best, correctional officers were negligent in transmitting the urgency of the condition to Mitchell-Lawshea, but the conduct of other correctional officers, including the CMT or the warden, is not at issue in this lawsuit, nor is negligence enough to give rise to potential liability.[3]

Similarly, Plaintiff's reliance on the APHA's definition of emergency, which includes "acute periapical abscess," does not establish that Mitchell-Lawshea was aware that Plaintiff's condition was so serious that immediate attention was required. The parties agree that the APHA is used only as a guide and that no one remembers making an APHA classification for Plaintiff's condition. (Pl. SOF ¶¶ 34-36; Defs. Resp. ¶¶ 34-36.) As noted above, the record establishes only that Mitchell-Lawshea was aware that Plaintiff "report[ed] abscess," (Def. SOF ¶ 12; Pl. Resp. ¶ 12), not that his abscess was bleeding or oozing pus or that it qualified as acute periapical abscess. For deliberate indifference,

---

[3] In his initial complaint, Plaintiff brought claims against "John or Jane Doe Defendants." In its initial screen, the Court reminded Plaintiff, a frequent litigant in the Northern District of Illinois, that he must conduct discovery to learn the identity of the Doe Defendants. Plaintiff never sought to amend his complaint to name these Doe Defendants or to add additional parties.

Plaintiff must establish that Mitchell-Lawshea both was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that she actually "dr[e]w the inference." *Gayton*, 593 F.3d at 620. The summary judgment record includes no evidence from which a trier of fact could make such a finding.

Here, while Plaintiff appears to have suffered a tooth infection, he has not demonstrated that Defendants were deliberately indifferent to his condition. Rather, Plaintiff was scheduled for a appointment when Mitchell-Lawshea learned of his condition. Although the appointment was cancelled due to staff shortage, the cancellation does not evince deliberate indifference by Mitchell-Lawshea to his condition. See *Berry*, 604 F.3d at 442 ("Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in the prison environment."). He was rescheduled for an appointment, seen and given medication on the rescheduled day, and his tooth was extracted within a week of that appointment. In short, his situation was prolonged but not ignored.

That leaves Mitchell-Lawshea's decision to reschedule Plaintiff, and not another inmate, due to the staff shortage. There simply is no evidence in the record that Mitchell-Lawshea was aware of an emergency-type situation at the time that she rescheduled Plaintiff's appointment. Nor is there any evidence that Plaintiff's situation was worse than that of inmates who were seen on January 14. In the meantime, when Plaintiff experienced and reported unrelated (as far as the record before the Court goes) symptoms that required immediate medical attention, he was seen and treated in the HCU emergency room. Although any amount of tooth pain is unpleasant, and Plaintiff's abscess likely was painful, Mitchell-Lawshea's actions with respect to the treatment of his tooth do not evince unwarranted delay or deliberate indifference to Plaintiff's situation. It is Plaintiff's burden at summary judgment to refute Defendants' contention that Mitchell-Lawshea was doing the best she could with

the resources available to her, and he has failed to meet that burden. See *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (A party "may move for summary judgment by showing . . . that there is an absence of evidence to support the nonmoving party's case") (quoting *Celotex*, 477 U.S. at 317) (internal quotation marks omitted). Without evidence that Mitchell-Lawshea was apprised of the serious nature of Plaintiff's abscess or that Plaintiff's condition was notably worse than that of other inmates, her decision to reschedule his appointment falls short of the sort of decision that "no minimally competent professional would have" made given the circumstances. See *Sain*, 512 F.3d at 894–95. Again, perhaps some fault lies with the officials who were given more detail about the nature of his condition and failed to relay that information to Mitchell-Lawshea, but the conduct of those officials is not before the Court today and, in all likelihood, the worst that could be said of those officials' conduct is that it showed negligence, not deliberate indifference.

**IV.   Conclusion**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment [38] and denies Plaintiff's cross motion for summary judgment [43]. Having never been served or identified, the Doe Defendants are dismissed. Judgment will be entered in favor of Defendants Mitchell-Lawshea and Dangerfield and against Plaintiff Dobbey.

Dated: 2/24/14  _____
Robert M. Dow, Jr.
United States District Judge